UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | | Date | October 6, 2025 |
|---|---|---|---|---|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | | |

| Present: The Honorable | CHRISTINA A. SNYDER | |
|---|---|---|
| Catherine Jeang | James Pence-Aviles | N/A |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:                    Attorneys Present for Defendants:

Aaron Scott                                           Agnes Doyle
                                                      Jacob Hadjis
                                                      Jeffrey Ratinoff

**Proceedings:**   THE AHOT DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT (Dkt. 69, filed on August 29, 2025);
DEFENDANT SELECT-TECH, INC.'S JOINDER IN THE
AHOT DEFENDANTS' MOTION FOR SUMMARY
JUDGEMENT (Dkt. 72, filed on August 29, 2025); THE AHOT
DEFENDANTS' MOTION TO EXCLUDE DOC. NO. 103-1
FROM THE SUMMARY JUDGMENT RECORD (Dkt. 107,
filed on September 29, 2025)

## I.   INTRODUCTION

This case centers on plaintiff's claims that defendants promoted and sold knockoff products that imitate the appearance of plaintiff's genuine products in violation of the Lanham Act and in breach of settlement agreements between certain defendants and plaintiff's predecessor.

On September 18, 2024, plaintiff Grover Products LLC ("plaintiff" or "Grover") filed this action against Air Horns of Texas, LLC ("AHOT"), Texas Air Horns, LLC, Jason Gabbert, Jana Hildreth, and Gerald Gabbert (collectively, "the AHOT defendants"). Dkt. 1 ("Compl."). Plaintiff asserts four claims for relief: (1) trademark counterfeiting, in violation of 15 U.S.C. § 1114(1); (2) trademark infringement, in violation of 15 U.S.C. § 1114(1); (3) breach of contract; and (4) false designation of origin, false and misleading descriptions and representations of fact, and false advertising, in violation of 15 U.S.C. § 1125(a)(1). Compl. ¶¶ 34-77.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | | Date | October 6, 2025 |
|---|---|---|---|---|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | | |

On November 6, 2024, the AHOT defendants filed their amended answer to the complaint, as well as a counterclaim seeking declaratory relief under 28 U.S.C. § 2201. Dkt. 26. The AHOT defendants seek a declaration that Grover Products Company ("GPC") abandoned any rights it had to the underlying marks; GPC was thus unable to, and did not, transfer any rights in those marks to plaintiff; and the AHOT defendants did not counterfeit or infringe the underlying marks. Id. at 15.

On February 24, 2025, plaintiff filed a motion for leave to file a first amended complaint, seeking to add claims against a new defendant, Select-Tech, Inc. ("Select-Tech"). Dkt. 33. On March 24, 2025, the Court granted plaintiff's motion. Dkt. 39.

On March 25, 2025, the plaintiff filed its operative first amended complaint against the AHOT defendants and Select-Tech, Inc. ("Select-Tech"). Dkt. 40 ("FAC"). The FAC asserts the same four claims for relief against the AHOT defendants: (1) trademark counterfeiting, in violation of 15 U.S.C. § 1114(1); (2) trademark infringement, in violation of 15 U.S.C. § 1114(1); (3) breach of contract; and (4) false designation of origin, false and misleading descriptions and representations of fact, and false advertising, in violation of 15 U.S.C. § 1125(a)(1). FAC. ¶¶ 34-77. The FAC asserts three claims against Select-Tech: (5) trademark counterfeiting, in violation of 15 U.S.C. § 1114(1); (6) trademark infringement, in violation of 15 U.S.C. § 1114(1); (7) false designation of origin, false and misleading descriptions and representations of fact, and false advertising, in violation of 15 U.S.C. § 1125(a)(1). Id. ¶¶ 78-137. Plaintiff's FAC seeks to hold the AHOT defendants jointly and severally liable under all claims asserted against Select-Tech. Id. ¶¶ 138-141.

On April 8, 2025, the AHOT defendants filed an amended answer to the FAC. Dkt. 47. On May 2, 2025, Select-Tech filed an answer to the FAC, as well as a counterclaim seeking declaratory relief under 28 U.S.C. § 2201. Dkt. 51. Select-Tech seeks a declaration that GPC abandoned any rights it had to the underlying marks; GPC was thus unable to, and did not, transfer any rights in those marks to plaintiff; and Select-Tech did not counterfeit or infringe the underlying marks. Id. at 27-28.

On August 29, 2025, the AHOT defendants filed the instant motion for summary judgment. Dkt. 69 ("Mot."). The AHOT defendants concurrently filed a statement of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | Date | October 6, 2025 |
|----------|------------------------|------|-----------------|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | |

uncontroverted facts ("SUF"), dkt. 69-2, as well as a declaration from L. Bradley Hancock and exhibits, dkts. 69-3 to 25.[1]

On August 29, 2025, Select-Tech filed a notice of joinder in the AHOT defendants' motion for summary judgment. Dkt. 72 ("Joind."). Select-Tech concurrently filed a statement of uncontroverted facts, dkt. 72-2 ("JSUF"), as well as a declaration from Jeffrey M. Ratinoff and 10 exhibits, dkts. 72-3 to 13.

On September 15, 2025, plaintiff filed an opposition to the AHOT defendants' motion for summary judgment. Dkt. 81 ("Opp. to mot.").[2] Plaintiff concurrently filed a statement of genuine disputes and additional material facts. Dkt. 82.[3] The same day, plaintiff filed an opposition to Select-Tech's joinder in the AHOT defendants' motion for summary judgment. Dkt. 83 ("Opp. to joind.").[4] Plaintiff concurrently filed a statement of genuine disputes and additional material facts, dkt. 84,[5] as well as declarations from Grant McComb, dkt 85,[6] Kristen Roesch, dkt. 86,[7] and exhibits, dkts. 86-1 to 21; dkts. 87-1 to 46.[8]

On September 22, 2025, the AHOT defendants filed a reply, dkt. 99 ("AHOT Reply"), as well as a response to plaintiff's statement of genuine disputes and additional material facts, dkt. 99-1.[9] The response covers the 82 facts asserted by defendants, dkt. 99-1 at 1-68 ("Resp. 1"), and the 88 additional facts independently asserted by plaintiff, dkt. 99-1 at 68-101 ("Resp. 2").

On September 22, 2025, Select-Tech filed a reply, dkt. 96 ("Select-Tech Reply"), as well as a response to plaintiff's statement of genuine disputes and additional material

---

[1] Some of these exhibits were filed under seal; the sealed exhibits are dkts. 70-1 to 71.

[2] The unredacted document is dkt. 93-17.

[3] The unredacted document is dkt. 93-19.

[4] The unredacted document is dkt. 93-18.

[5] The unredacted document is dkt. 93-20.

[6] The unredacted document is dkt. 93-22.

[7] The unredacted document is dkt. 93-21.

[8] Some of these exhibits were filed under seal; the sealed exhibits are dkts. 93-1 to 16. Plaintiff filed its Exhibit 26 on September 25, 2025. Dkt. 103.

[9] The AHOT defendants' reply and response to plaintiff's statement of genuine disputes and additional material facts were filed under seal. See dkt. 99.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | Date | October 6, 2025 |
|---|---|---|---|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | |

facts, dkt. 96-1.[10]  The response covers the 4 facts asserted by Select-Tech, dkt. 96-1 at 2-4 ("Select-Tech Resp. 1"), and the 95 facts independently asserted by plaintiff, dkt. 96-1 at 4-95 ("Select-Tech Resp. 2").

On September 25, 2025, the Court ordered plaintiff to lodge Exhibit 26 because plaintiff referenced Exhibit 26 in its filings at docket nos. 81 and 82 but did not file the Exhibit.  Dkt. 102.  On September 25, 2025, plaintiff filed Exhibit 26, explaining that the Exhibit was inadvertently not included when plaintiff filed its papers in opposition to the AHOT defendants' and Select-Tech's motions for summary judgment.  Dkt. 103.  On September 29, 2025, the AHOT defendants filed a motion to exclude Exhibit 26 (dkt. 103-1) from the summary judgment record.  Dkt. 107.

On October 6, 2025, the Court held a hearing.  Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.    BACKGROUND

Unless otherwise noted, the Court references only facts that are uncontroverted and to which evidentiary objections, if any, have been overruled.[11]

### A.    Grover Products Company Settlements with the AHOT Defendants

Nonparty GPC was founded in 1937.  Resp. 2 ¶ 1.  GPC manufacturers air horns and related products that have been used throughout the United States and around the world for many decades to outfit fire engines, ambulances, over-the-road trucks, military equipment, and in a wide range of vehicles and applications.  Id. ¶ 5.  Clarence Roesch, John Roesch, and then Sigrid ("Kristen") Roesch have each, over the years, served as GPC's chief executive.  Id. ¶ 2.  The great-grandson of Clarence Roesch, Grant McComb, grew up around the company and was a GPC employee for many years.  Id. ¶ 3.

GPC registered trademarks for GROVER, STUTTERTONE, TRUKTONE, and ORGANTONE.  See id. ¶ 7-11.  Each registered mark was registered for, among other

---

[10] Select-Tech's response to plaintiff's statement of genuine disputes and additional material facts was filed under seal.  See dkt. 96-1.

[11] To the extent the Court relies on evidence to which there has been an objection, the Court has overruled the objection to that evidence.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                     **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | | Date | October 6, 2025 |
|---|---|---|---|---|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | | |

things, "air horns for the truck, automotive, industrial, marine and recreational vehicle industries," "air horns for [emergency] vehicles," "horns for vehicles," and "warning horns for vehicles." Id. ¶ 12.

The parties dispute whether AHOT obtained and sold a line of "knockoff" products designed and styled to look like authentic GROVER® air horns, pedestals, stanchions, valves, sound units, and repair kits, and more. Id. ¶ 18.

In 2014, GPC sued the AHOT defendants in the case captioned Grover Products Co. v. Texas Air Horns, LLC et al., 14-cv-05469 (C.D. Cal. 2014). Id. ¶ 20. Effective September 23, 2014, the AHOT defendants entered a settlement agreement ("the First Settlement Agreement") with GPC. Resp. 1 ¶ 1. The parties dispute plaintiff's standing to bring its claims for breach of the First Settlement Agreement against the AHOT defendants. See resp. 1 ¶ 4.

In 2018, GPC commenced another lawsuit against the AHOT defendants in a case captioned Grover Products Co. v. Texas Air Horns, LLC, et al., 2:18-cv-00708 (C.D. Cal. 2018). See resp. 2 ¶ 22. Effective November 19, 2018, the AHOT defendants entered a second settlement agreement with GPC ("the Second Settlement Agreement"). Resp. 1 ¶ 6. The parties also dispute plaintiff's standing to bring its claims for breach of the Second Settlement Agreement against the AHOT defendants. See resp. 1 ¶ 8.

**B.    Winding Up of GPC and Plaintiff's Purchase of GPC Assets**

GPC faced business challenges which led it to submit its Election to Wind Up and Dissolve. Resp. 2 ¶ 47. On March 18, 2022, a GPC employee contacted the company that maintained the GPC website and requested that the online store be shut down so that it would "not receive any orders at this time." Resp. 1 ¶ 12. On April 1, 2022, GPC filed its Certificate of Election to Wind Up and Dissolve with the California Secretary of State. Resp. 1 ¶ 14. GPC shut down its online store and began announcing to customers that it was no longer accepting new orders. Resp. 2 ¶ 51. Between March 2022 and December 2022, GPC sent multiple emails to customers informing them that GPC had decided to "close permanently," that "Grover is no longer operating," and/or that "[t]here is some former Grover inventory that may be available through Air Horn Guys who may be contacted as follows [providing contact information]." See Resp. 1 ¶ 15; see generally dkt. 70-3.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                              **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | Date | October 6, 2025 |
|---|---|---|---|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | |

After reminding GPC on March 1, 2021 that it must file a Declaration of Use and/or Excusable Nonuse Under Section 8 (Section 8 Declaration) to maintain its ORGANTONE mark, the United States Patent and Trademark Office ("USPTO") on September 16, 2022 canceled GPC's trademark registration for ORGANTONE after GPC failed to file an acceptable Section 8 Declaration. Resp. 1 ¶¶ 10, 16. After reminding GPC on March 15, 2021 that it must file a Section 8 Declaration to maintain its TRUKTONE mark, the USPTO on September 30, 2022 canceled GPC's trademark registration for TRUKTONE after GPC failed to file an acceptable Section 8 Declaration. Id. ¶¶ 11, 19.

The parties dispute when GPC sold its last product. Resp. 1 ¶ 13. Plaintiff contends that GPC continued making new sales to customers through at least May 30, 2022. Id. Plaintiff further contends that in 2017, by agreement with GPC, Grant McComb ("McComb") created Drop, Inc. d/b/a The Air Horn Guys ("TAHG"), and that GPC and McComb agreed that Drop, Inc. would be a distributor of GROVER® products. Id. Plaintiff contends that Drop, Inc. was a licensee of the Grover Marks under an oral license agreement and under an implied license. Id. Plaintiff contends that GPC maintained supervisory control over Drop, Inc. and that Drop, Inc. made continuous sales of products under the Grover Marks throughout all of 2022 and beyond. Id. By contrast, the AHOT defendants argue that GPC sold its last product on March 29, 2022. Id. The AHOT defendants further argue that Drop, Inc.'s activities cannot be imputed onto either plaintiff or GPC. Id.

The parties dispute whether GPC sold items, received orders, made shipments, and/or processed refunds for products—including for any product branded with any of the Grover Marks—in the months of April to December 2022. Id. ¶¶ 20, 21, 23-27, 37. Plaintiff argues that Drop, Inc. made continuous sales of products under the Grover Marks throughout all of 2022 and beyond and that Drop, Inc. was a licensee of the Grover Marks. Id. Plaintiff thus argues that "marketing, sale, and shipment of products under the Grover Marks never stopped and Grover Products never had any intention that use would stop." Resp. 2 ¶ 54. By contrast, the AHOT defendants argue that the activities of Drop, Inc. are irrelevant to this dispute. Resp. 1 ¶ 20. GPC sold no items, received no orders, made no shipments, and processed no refunds for any product—including for any product branded with any of the Grover marks—in the months of January 2023 through May 2023. Id. ¶ 39.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**              **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | Date | October 6, 2025 |
|---|---|---|---|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | |

In 2021 and early 2022 Kristen Roesch began exploring business sale options for GPC by working with a business broker to identify possible buyers. Resp. 2 ¶ 37. For a period of months over the course of late 2021 and early 2022, Mr. McComb and Kristen Roesch communicated about the possibility of Mr. McComb purchasing the Grover Marks so he could manufacture and sell products through a new business entity—now plaintiff Grover Products LLC. Id. ¶ 38, 41, 42. Mr. McComb submitted a specific proposal to buy the intellectual property and other assets of GPC to the attorneys of GPC, along with a formal Business Plan, on May 2, 2022. Id. ¶ 39.

On November 15, 2022, Grant McComb formed McComb Holdings LLC, now called plaintiff Grover Products LLC. Id. ¶ 18; dkt. 69-13; opp. to mot. at 6.

On November 23, 2022, GPC and plaintiff entered an Asset Purchase Agreement. Resp. 1 ¶ 28. Under the Asset Purchase Agreement, plaintiff purchased any interest that GPC may have had in its Inventory, as defined in Schedule 1.01(a) and Intellectual Property, as defined in Schedule 1.01(b)(i) for $40,000. Id. ¶ 29. The parties dispute whether plaintiff acquired from the Asset Purchase Agreement GPC's contractual rights under the First and Second Settlement Agreements. Id. ¶ 30; resp. 2 ¶ 42.

On or about November 25, 2022, GPC and plaintiff also entered into an Intellectual Property Assignment and a Trademark Assignment Agreement. See resp. 2 ¶ 41; dkt. 70-6 at 1; dkt. 80-8 at 1. The Intellectual Property Assignment defines the "Intellectual Property Rights" that non-party GPC conveyed to plaintiff with a nearly identical definition as "Intellectual Property" under the Asset Purchase Agreement, with only the Asset Purchase Agreement's reference to the Intellectual Property Assignment removed. Resp. 1 ¶ 32. The Intellectual Property Assignment expressly provides that "[n]otwithstanding any provision to the contrary set forth herein or in the Asset Purchase Agreement or in any document, instrument or agreement executed in connection herewith or therewith, no provision in this Assignment in any way waives, restricts, alters, adds to, diminishes, or limits the express provisions…set forth in the Asset Purchase Agreement." Id. ¶ 34. The Intellectual Property Assignment further provides that "[i]n the event of a conflict between the terms of this Assignment and the terms of the Asset Purchase Agreement, the terms of the Asset Purchase Agreement shall prevail and govern." Id. ¶ 35.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**               **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | Date | October 6, 2025 |
|----------|------------------------|------|------------------|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | |

    The Trademark Assignment Agreement conveyed to plaintiff "all right, title, and interest in and to the Trademarks" as well as: "any and all claims and causes of action with respect to any of the foregoing, whether accruing before, on, or after the date hereof, including all rights to and claims for damages, restitution, and injunctive and other legal and equitable relief for past, present, and future infringement, [or], breach, [] with the right but no obligation to sue for such legal and equitable relief and to collect, or otherwise recover, any such damages." Resp. 2 ¶ 44, dkt. 93-7 at 1-2. However, the AHOT defendants argue that plaintiff expressly acknowledged that the Trademark Assignment Agreement is subordinate to the Asset Purchase Agreement. Resp. 2 ¶ 44.

    On May 15, 2023, plaintiff filed to register the TRUKTONE and ORGANTONE trademarks with the USPTO. Id. ¶ 59. On June 4, 2024, new registrations for TRUKTONE and ORGANTONE trademarks were issued to plaintiff. Resp. 2 ¶ 60.

    From 2016-2018, GPC sent at least 28 demand letters to at least 21 companies and filed at least 3 lawsuits asserting its trademark rights. Resp. 1 ¶ 41. GPC sent no demand letters and filed no lawsuits asserting its trademark rights from 2019 through October 31, 2023. Id. ¶ 42-43.

    **C.**     **The AHOT Defendants' Alleged Infringement of Plaintiff's Trademarks**

    The parties dispute whether the AHOT defendants have described any product with the trademarked terms "TRUCKTONE," "ORGANTONE," or "STUTTERTONE" at any point since November 19, 2018 (when the AHOT defendants entered the Second Settlement Agreement with GPC). Id. ¶¶ 44, 6. Plaintiff argues that the AHOT defendants advertised and sold a "Truck tone air horn kit" and that fire equipment distributor Foster Coach provided a May 7, 2020 Quotation to a fire department including as a line item "PURCHASE AND INSTALL 21" AIR HORNS OF TEXAS 'STUTTERTONE' AIR HORNS ON FRAME RAILS." Id. ¶ 44. The AHOT defendants argue that describing a product as a "Truck tone air horn kit" is merely descriptive and does not use the alleged TRUKTONE mark. Id. The AHOT defendants argue that the use of the phrase STUTTERTONE by an unrelated third party (Foster Coach) in a document sent to yet another unrelated third party does not give rise to any claim because it does not contain any product descriptions prepared by the AHOT defendants. Resp. 1 ¶ 44.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | Date | October 6, 2025 |
|---|---|---|---|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | |

The parties dispute whether the AHOT defendants advertised its products using the Grover marks after the Second Settlement Agreement was entered. Plaintiff argues that after the Second Settlement Agreement was entered, AHOT advertised at least seven of its products on eBay using the word "Grover" or Grover model numbers. Resp. 2 ¶ 65. Plaintiff also argues that on eBay and Amazon, AHOT advertised its products using various Grover model numbers. Id. ¶¶ 66-72. The AHOT defendants argue that the plaintiff does not provide competent evidence that supports these allegations. Id. By contrast, the AHOT defendants state that defendant AHOT has made a total of two product listings on eBay where AHOT described the goods offered as "Grover style" since November 19, 2018. The AHOT defendants argue that no other AHOT defendants has made any product listings on eBay. Id. ¶ 45. The parties dispute whether any of the AHOT defendants has responded to any buyer by stating "Thanks from groverairhorns.com" or any similar statement at any point since at least November 19, 2018. Id. ¶ 46. The AHOT defendants maintain that they have not received any feedback indicating that any customer believed they were purchasing a "real Grover product" at any point since at least November 19, 2018. Id. ¶ 47.

The product review referenced in plaintiff's First Amended Complaint stating that a customer provided the feedback "Ordered a Grover Products horn, Received a replica from Taiwan" was left on eBay on May 4, 2009, before the Effective Dates for either the First Settlement Agreement or the Second Settlement Agreement. See id. ¶ 48. The product review referenced in Plaintiff's First Amended Complaint stating that a customer provided the feedback "might be 1510…But definitely NOT GROVER somewhat misleading" was left on August 10, 2012, before the Effective Dates for either the First Settlement Agreement or the Second Settlement Agreement. Id. ¶ 49.

After the Second Settlement Agreement was entered, on its website Airhornsoftexas.com, AHOT displayed a prominent row of "product tags" running down the left side of multiple pages, that included references to "grover," "grover products." Resp. 2 ¶¶ 73. The parties dispute whether AHOT has used Grover's purported model numbers as defined in Exhibit C of the First Settlement Agreement after the effective date of the Second Settlement Agreement. Id. ¶ 74. The parties dispute whether customers of the AHOT defendants believed they were buying genuine GROVER® products from AHOT. Id. ¶ 87.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | | Date | October 6, 2025 |
|---|---|---|---|---|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | | |

**D.    Select-Tech's Alleged Infringement of Plaintiff's Trademarks**

Prior to 2010 Select-Tech was a purchaser of Grover products.  Select-Tech Resp. 2 ¶ 62.  Around 2010, Select-Tech ceased buying genuine GROVER® products from GPC.  Id. ¶ 63.

Between January 1, 2011 and February 28, 2025, Select-Tech sold a total of fifteen different AHOT products.  Select-Tech Resp. 1 ¶ 1.  The parties do not dispute that plaintiff had no evidence that Select- Tech used the Organtone mark in an unauthorized manner in conjunction with the advertising or sale of any goods at the time that it filed the First Amended Complaint.  Id. ¶ 2.  The parties dispute whether AHOT products that plaintiff purchased from Select-Tech in February 2025 had any of the Grover Marks physically affixed to or imprinted on the products or their packaging.  Id. ¶ 3.  By at least 2014, Select-Tech used the GROVER name and the TRUKTONE mark in the course of describing its products; however, the parties dispute whether Select-Tech's use of the Grover name and marks was for the purpose of advertising its air horn products or for the purpose of identifying aftermarket replacements and equivalents.  Select-Tech Resp. 2 ¶ 64-65.

In September 2014, GPC sent Select-Tech a cease-and-desist letter demanding that Select-Tech cease its use of Grover's Marks.  Id. ¶ 66.  In response to the cease-and-desist letter, Select-Tech's Chris Landers wrote back stating that "all items with reference to 'Grover' have been changed including pictures" and that "[w]e apologize for 'infringing' on their name, it was certainly not malicious."  Id. ¶ 67.  The parties dispute whether, after Select-Tech's receipt of the cease-and-desist letter, Select-Tech offered for sale on its website certain products that it identified as Grover products and dispute whether Select-Tech claimed that it was a distributor of real Grover products.  See id. ¶¶ 72-75.  The parties also dispute whether from 2011 to 2025 Select-Tech's online catalog referenced Grover model numbers, trademarks, and real Grover photographs to advertise its products.  Id. ¶¶ 76-80.

Kristin Roesch purchased some of Select-Tech's products from its website Fixmyambulance.com, using the name "Kris Roe."  Id. ¶ 83.  Following her purchase, Select-Tech sent Kristin Roesch (i.e., "Kris Roe") confirmation emails stating that she had purchased a "Grover-1522" identified as a "Grover Sound Unit Repair Kit" and a "Grover-1720" identified as a "Grover Air Horn Pedestal."  Id. ¶ 84.  Kristin Roesch (i.e., Kris Roe") also purchased from Select-Tech a horn advertised by Select-Tech as an "Air

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | Date | October 6, 2025 |
|---|---|---|---|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | |

Horn 1510." Id. ¶ 90.  The products that Select-Tech shipped to Kristin Roesch (i.e., "Kris Roe") were not genuine GROVER® products.  Id. ¶ 86.

## III.   LEGAL STANDARD

### A.   Joinder of Motions

Select-Tech has filed a joinder in the AHOT defendants' motion for summary judgment.  Joind.

"'Allowing one party to join another party's motion is a matter well within the district court's substantial case management discretion.'"  Apothio, LLC v. Kern Cnty., 599 F. Supp. 3d 983, 1002 (E.D. Cal. 2022) (citing United States ex rel. Ambrosecchia v. Paddock Lab'ys, LLC, 855 F.3d 949, 956 (8th Cir. 2017)).

> When reviewing whether to allow a party to join in a motion, the court will allow the joinder when either (1) the parties are so similarly situated that filing an independent motion would be redundant, or (2) the party seeking joinder specifically points out: which parts of the motion apply to the joining party, the joining party's basis for standing, and the factual similarities between the joining party and moving party that give rise to a similar claim or defense."

Tatung Co., Ltd. v. Shu Tze Hsu, 217 F. Supp. 3d 1138, 1151 (C.D. Cal. 2016) (citing cases).

Because Select-Tech's joinder addresses most of the issues presented by the AHOT defendants, the Court concludes that joinder in this case is appropriate.

### B.   Summary Judgment

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion.  Anderson v.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | Date | October 6, 2025 |
|----------|----------------------|------|-----------------|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | |

Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the evidence presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

## IV. DISCUSSION

### A. The AHOT Defendants' Motion to Exclude Dkt. 103-1 (Plaintiff's Exhibit 26) from the Summary Judgment Record

The AHOT defendants argue that the Court should exclude docket 103-1 (plaintiff's Exhibit 26) from the summary judgment record because it is unauthenticated under Federal Rule of Evidence 901. Dkt. 107 at 4. The AHOT defendants further argue that plaintiff's Exhibit 26 should be excluded because it was not timely included in plaintiff's opposition. Id. at 6. (citing C.D. Cal. L.R. 7-10).

In opposition, plaintiff argues that its Exhibit 26 has been sufficiently authenticated. Dkt. 110 at 4-5.

In reply, the AHOT defendants argue that Exhibit 26 has not been properly authenticated because plaintiff's lawyer lacks direct personal knowledge of the Air Horns

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**　　　　　　'O'

| Case No. | 2:24-cv-08002-CAS-PDx | | Date | October 6, 2025 |
|---|---|---|---|---|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | | |

of Texas eBay page and that AHOT defendants "have strong evidence that Plaintiff's
Exhibit 26 is fabricated." Dkt. 113 at 2.

On September 25, 2025, the Court informed plaintiff that it failed to include
Exhibit 26 that plaintiff referenced in its opposition papers. Dkt. 102. The same day,
plaintiff filed Exhibit 26 along with a declaration from plaintiff's counsel stating that
Exhibit 26 "is a true and correct copy of a compilation of eBay website captures and
mobile application screen images reflecting the 'Air Horns of Texas' seller." Dkt. 103.
Having reviewed Exhibit 26 and counsel's declaration, the Court finds that Exhibit 26
should not be excluded from the summary judgment record because the AHOT
defendants have not established that Exhibit 26 could not be presented in a form that
would be admissible at trial.[12] See Fraser v. Goodale, 342 F.3d 1032, 1036-37 (9th Cir.
2003). As noted at the hearing, the Court reserves judgment as to whether Exhibit 26
may be admitted at trial.

**B.   The AHOT Defendants**

The AHOT defendants argue that plaintiff lacks standing for its breach of contract
claim. Mot. at 13-17. Second, the AHOT defendants argue that plaintiff's infringement
claims fail because GPC abandoned its trademarks before it attempted to transfer them to
plaintiff. Id. at 17-35. Third, the AHOT defendants argue that even setting aside
standing and abandonment issues, they are entitled to summary judgment because
plaintiff has no colorable basis to establish its Lanham Act claims. Id. at 26-33.

　　　　　1.   Standing (Breach of Contract)

The AHOT defendants argue that plaintiff lacks standing to assert claims under the
First Settlement Agreement and Second Settlement Agreement (collectively, "Settlement
Agreements") between the AHOT defendants and non-party GPC because plaintiff is not
a party to either agreement and GPC did not assign its rights under the Settlement
Agreements to plaintiff. Mot. at 7. They argue that plaintiff therefore lacks standing to
assert its breach of contract claims, and the AHOT defendants are entitled to summary

---

[12] Even if plaintiff's Exhibit 26 were excluded, the Court would nonetheless deny the
AHOT defendants' motion for summary judgment.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | Date | October 6, 2025 |
|----------|----------------------|------|-----------------|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | |

judgment on plaintiff's contract claims and the AHOT defendants' counterclaim for declaratory relief.  Id.

Under the First Settlement Agreement, non-party Grover Products Company agreed to "unconditionally, fully and completely release, acquit and forever discharge [the AHOT] Defendants and their respective predecessors, successors, members, managers, officers, employees, and attorneys from any and all demands, actions, assertions, causes of action, suits, debts, compensation, liabilities, damages, losses, costs and expenses for any acts or omissions occurring prior to the Effective Date and that were or could have been asserted in the Complaint[.]"  Resp. 1 ¶ 2.

In the First Settlement Agreement, the AHOT defendants agreed, among other things, to "permanently cease and refrain from using or incorporating the following in any manner whatsoever":

(a) Any of Grover Products' trademarks, including, without limitation, GROVER® and STUTTERTONE®, Truktone™, Organtone™, Grover Products' logo, and any pictures copyrighted by Grover Products or displayed on any Grover Products' website; and (b) Any use of model numbers identified in Exhibit C [of the Agreement][13]; and (c) Any content stating or implying that any products sold by Defendants are manufactured or endorsed by Grover Products, or stating or implying that any one of Defendants are affiliated with Grover Products. (d) Any

---

[13] Exhibit C states:

Products currently or formerly bearing the following model number, whether preceded by 3 "CX" or "AH" or any other identifier, and regardless of whether "Kit" or any other descriptor follows the model number:
1510 1054 1512 1055 1601 1042 1522 1094 1160 1230 1180 1218 1700 1701 1024 2000 2001 1045 1136 1127 1093 1517 1612 1703 1087 1720 1630 1240 1644
All shields, pedestals, sound units, sound unit repair kits, tubing, and/or valves sold to accompany these products.  Additionally, any other product advertised or identified by any Defendant using the word 24 "Grover" in a manner that suggests they are/were Grover® products, and/or with the understanding that the customer was/would be purchasing a Grover® product.
Dkt. 85-7 at 17 (cleaned up).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | Date | October 6, 2025 |
|----------|----------------------|------|-----------------|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | |

use of Grover's name or trademarks in the titles or headings of any advertisements. (e) Any use of any recording or reproduction of the sound of any Grover Products air horn.

Dkt. 85-7 at 2.

The AHOT defendants also agreed to display a specific disclaimer disavowing any relationship with GPC on all websites through which it sells air horns and related products and pay $5,000 in per-breach liquidated damages in the event that they breached the agreement and did not timely cure the breach(es).  Resp. 2 ¶ 21.

Under the Second Settlement Agreement, GPC agreed to release and forever discharge the AHOT defendants, "including their directors, owners, shareholders, agents, members, representatives, relatives and employees, from any and all past or present claims, demands, causes of action, obligations, damages, liabilities, expenses, fees (including attorneys' fees) or compensation of whatever kind or nature, whether known or unknown from the beginning of time to the Effective Date."  Resp. 1 ¶ 7.

Both the First and the Second Settlement Agreements are governed by California law.  Id. ¶¶ 5, 9.

The AHOT defendants argue that "[p]laintiff is a mere incidental third-party beneficiary to the Settlement Agreements" rather than an intended third-party beneficiary.  Id. at 12-13.  Thus, they argue that plaintiff, a contractual non-party, lacks standing to enforce that contract.  In support, the AHOT defendants point to the Asset Purchase Agreement between plaintiff and GPC that lacks "any express indication that Plaintiff would acquire collateral—likely contingent and unvested—contractual litigation rights non-party GPC may have had arising from contracts related to its IP."  Id. a 14.  Moreover, the AHOT defendants argue that although GPC transferred rights to certain trademarks to plaintiff, "the subsequent transfer of a trademark does not necessarily deprive the original trademark holder of standing to sue to enforce a settlement agreement related to that trademark."  Id. at 15 (citing Sun-Maid Raisin Growers of Cal. v. Cal. Pack. Corp., 273 F.2d 282, 284 (9th Cir. 1959)).  The AHOT defendants argue that "Sun-Maid coupled with the traditional suspicion toward assigning damages both indicate that GPC could only transfer its collateral contractual litigation rights [arising under] pre-existing settlement agreements [by] expressly [agreeing to do so]. As the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | Date | October 6, 2025 |
|----------|----------------------|------|-----------------|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | |

Asset Purchase Agreement failed to expressly transfer GPC's contractual litigation rights to Plaintiff, Plaintiff lacks standing to assert those rights." Id. at 16.

In opposition, plaintiff argues that it has standing because "(1) Plaintiff is a third-party beneficiary of both Settlement Agreements and (2) the express terms of the documents executed as part of the [Asset Purchase Agreement] make clear that Plaintiff may enforce the contracts." Opp. to mot. at 11-12.  First, plaintiff argues that "[b]oth the language and circumstances of the First and Second Settlement Agreements demonstrate that future entities carrying on the sale of products under the Grover Marks were intended beneficiaries." Id. at 12 (quoting the First Settlement Agreement, dkt. 85-7, as stating: "[t]his Agreement shall be binding upon and shall inure to the benefit of the Parties and their respective subsidiaries as well as their successors, heirs and assigns (including, without limitation, in connection with any merger, acquisition, spin-off, reorganization, or sale of assets or the business"; quoting the Second Settlement Agreement, dkt. 85-8, as stating: "This Agreement and all covenants and releases set forth herein shall be binding upon and shall inure to the benefit of the Parties, their successors, agents, members, heirs, assigns, partners, officers, directors, representatives, owners, shareholders, employees, affiliated corporations and business entities.").  Moreover, plaintiff argues that:

> The purpose of the Settlement Agreements was to stop the AHOT Defendants from continuing their unlawful activity. Both Settlement Agreements reflect that another motivating purpose of the contracts was that related and future companies would have enforcement rights. Permitting Plaintiff to enforce the contractual language is consistent with the parties' expectations as reflected in the plain language of the contracts they signed.

Id. at 13.

Thus, plaintiff argues that it is a third-party beneficiary under California law, which requires that "(1) the third-party actually would benefit from the contract; (2) a motivating purpose of the parties to the contract was to benefit the third-party; and (3) allowing a third-party to sue for breach of contract is consistent with the expectations of the parties." Id. at 12 (citing Goonewardene v. ADP, LLC, 434 P.3d 124, 133 (2019)).

Second, plaintiff argues that "[it] stepped into the shoes of [GPC] as a trademark assignee and the [Asset Purchase Agreement] transaction documents bestowed standing to pursue breach of contract claims." Id. at 13 (citing Russell Rd. Food & Beverage, LLC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | Date | October 6, 2025 |
|----------|----------------------|------|-----------------|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | |

v. Spencer, 2014 WL 1809697, at *1–2 (D. Nev. May 6, 2014), aff'd, 829 F.3d 1152 (9th Cir. 2016)).  Plaintiff argues that:

> Both McComb and Kristen Roesch were aware of the Settlement Agreements that [GPC] had entered into with the AHOT Defendants. … They intended to and did assign to Plaintiff the right to pursue breach of contract claims under those Settlement Agreements. … The executed contracts conveyed "all right, title, and interest in and to the Trademarks" and any rights to the Grover model numbers, and expressly assigned "any and all claims and causes of action" including "all rights to and claims for… infringement [or] *breach* with the right [] to sue" thereon. … Thus, under the plain language of the Trademark Assignment and [Intellectual Property Assignment], Plaintiff received all rights to the Grover Marks and model numbers as well as all "causes of action" for, among other things, "breach" with respect to the Grover Marks.

Id. at 14 (emphasis in original) (quoting the Trademark Assignment Agreement, dkt. 80-8 at 2).

In reply, the AHOT defendants argue that the clear and unambiguous terms of the Trademark Assignment Agreement subordinate it to the Asset Purchase Agreement. AHOT Reply at 8 (citing the Asset Purchase Agreement as stating that "[i]n the event of any conflict or inconsistency between the terms of the Purchase Agreement and the terms hereof, the terms of the Purchase Agreement shall govern").  The AHOT defendants argue that "[u]nder the [Asset Purchase Agreement], Plaintiff acquired only non-party GPC's Inventory and Intellectual Property … Notably absent is any express indication that Plaintiff would acquire collateral—likely contingent and unvested—contractual litigation rights non-party GPC may have had arising from contracts related to its Intellectual Property."  Id. at 9.  The AHOT defendants argue that "[p]laintiff's attempt to resort to the parole testimony of Kristen Roesch and Grant McComb is incompetent evidence as a matter of law" because "'[t]he execution of a contract in writing, whether the law requires it to be written or not, supersedes all the negotiations or stipulations concerning its matter which preceded or accompanied the execution of the instrument.'" Id. at 10 (quoting Cal. Civ. Code § 1625; citing Casa Herrera, Inc. v. Beydoun, 32 Cal. 4th 336, 343 (2004)).  Thus, the AHOT defendants argue that Grant McComb's and Kristen Roesch's declarations, "both of which attempt to impermissibly expand the intent of the parties to the Asset Purchase Agreement beyond what is set forth expressly in the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | Date | October 6, 2025 |
|---|---|---|---|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | |

writing—is inadmissible to contradict the Asset Purchase Agreement's clear and unambiguous terms." <u>Id.</u>

Viewing the facts in the light most favorable to plaintiff, the Court finds that plaintiff has presented sufficient evidence to establish that there is a genuine issue of fact as to whether it has standing to bring its breach of contract claim against the AHOT defendants on the basis that plaintiff is a third-party beneficiary under the First and Second Settlement Agreements. Under California law, "[a] contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." Civ. Code § 1559. The test is "(1) whether the third party would in fact benefit from the contract … (2) whether a motivating purpose of the contracting parties was to provide a benefit to the third party, and (3) whether permitting a third party to bring its own breach of contract action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties." <u>Goonewardene</u>, 434 P.3d at 133 (2019).

Here, plaintiff has provided competent evidence that suggests that plaintiff was an intended third-party beneficiary to the Agreements between GPC and the AHOT defendants, thus conferring plaintiff with standing to enforce them. The Agreements expressly state that they shall be "binding upon and shall inure to the benefit of the Parties" and their "subsidiaries," "successors," "heirs," and "assigns." Dkts. 85-7 at 7; dkt. 85-8 at 3. Plaintiff presents competent evidence such that a jury could conclude that plaintiff is a "successor" to GPC, a signatory on both Agreements. "'The term 'successor' generally means a corporation that by merger, consolidation, or other legal reorganization has been transferred rights by and has assumed performance obligations of another corporation.'" <u>Sunlight Prod. Techs., Ltd. v. MPOWERD Inc.</u>, No. CV150126MWFJEMX, 2015 WL 12655472, at *6 (C.D. Cal. Mar. 23, 2015) (citations omitted). The Asset Purchase Agreement between GPC and McComb Holdings, LLC (now plaintiff)[14] conveyed GPC's "Inventory" and "Intellectual Property" to plaintiff and also states that GPC and plaintiff shall each deliver the executed "Trademark Assignment" Agreement and the "[Intellectual Property] Assignment" at closing. Dkt. 70-5 at 1, 2. In turn, the Trademark Assignment Agreement states that GPC conveyed to

---

[14] To avoid confusion, the Court uses McComb Holdings, LLC and plaintiff interchangeably because it is undisputed that McComb Holdings, LLC is now called Grover Products LLC, i.e., plaintiff. Resp. 1 ¶ 41

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | Date | October 6, 2025 |
|----------|----------------------|------|-----------------|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | |

plaintiff "all right, title, and interest in and to the Trademark[s] [listed in Appendix A of the Trademark Assignment Agreement]" and conveyed "any and all claims and causes of action with respect to [the Trademarks] … whether accruing before, on, or after the date hereof … including all rights to and claims for … infringement … [and] breach … with the right … to sue." Dkt. 80-8 at 1-2. Thus the Asset Purchase Agreement and the Trademark Assignment Agreement are evidence that plaintiff is a "successor" to GPC.

Furthermore, plaintiffs provide declarations from GPC's former CEO Kristen Roesch and CEO/owner of plaintiff Grant McComb indicating that it was the intention of contracting parties GPC and plaintiff that the Asset Purchase Agreement and associated contracts would assign all rights of GPC related to the Grover marks—including contractual rights under the First and Settlement Agreements—to McComb Holdings, LLC (later renamed Grover Products, LLC, plaintiff). Resp. 2 ¶ 42.

Plaintiff has thus set forth evidence establishing that it has standing to enforce the First and Second Settlement Agreements as a third-party beneficiary: Plaintiff has established that 1) it would benefit from the Settlement Agreements; 2) a motivating purpose of the contracting parties was to provide a benefit to plaintiff; 3) permitting plaintiff to bring its own breach of contract action against a contracting party is consistent with the objectives of the Agreements and the reasonable expectations of the parties. See Goonewardene, 434 P.3d at 133 (2019).

The Court is unpersuaded by the AHOT defendants' argument that the language of the Asset Purchase Agreement unambiguously precludes plaintiff from enforcing the First and Second Settlement Agreements. See AHOT Reply at 9. "In contract cases, summary judgment is appropriate only if the contract or contract provision in question is unambiguous." Castaneda v. Dura—Vent Corp., 648 F.2d 612, 619 (9th Cir. 1981). "The determination of whether contract language is ambiguous is a question of law." O'Neil v. United States, 50 F.3d 677, 682 (9th Cir. 1995). If a contract is ambiguous, "ordinarily summary judgment is improper as differing views of the intent of parties will raise genuine issues of material fact." United States v. Sacramento Municipal Utility Dist., 652 F.2d 1341, 1344 (9th Cir. 1981).

Under California law, "[t]he language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity," and "[w]hen a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone, if possible." Cal. Civ. Code §§ 1638–1639. "The fundamental goal of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | Date | October 6, 2025 |
|---|---|---|---|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | |

contractual interpretation is to give effect to the mutual intention of the parties." Byrne v. Laura, 60 Cal. Rptr. 2d 908, 916 (1997). "The words of a contract are to be understood in their ordinary and popular sense, rather than according to their strict legal meaning; unless used by the parties in a technical sense, or unless a special meaning is given to them by usage, in which case the latter must be followed." Cal. Civ. Code § 1644. Furthemrore, "[a] contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." Id. § 1643. "[L]anguage in a contract must be interpreted as a whole, and in the circumstances of the case, and cannot be found to be ambiguous in the abstract." Saheli v. White Mem'l Med. Ctr., 21 Cal. App. 5th 308, 230 (internal citations omitted).

The Court agrees with the AHOT defendants that the Trademark Assignment Agreement is subordinate to the Asset Purchase Agreement and that the Asset Purchase Agreement conveyed only GPC's "Inventory" and "Intellectual Property" (as defined in the Asset Purchase Agreement) to plaintiff. See id.; dkt. 70-5 at 1; dkt. 80-8 at 2. However, the Court finds that the Asset Purchase Agreement's definition of "Intellectual Property" does not unambiguously exclude GPC's contractual litigation rights pursuant to the Settlement Agreements. The Asset Purchase Agreement's definition of "Intellectual Property" includes "any trademarks and service marks used by the Seller … including all applications and registrations and [associated] goodwill … as more particularly described in the IP Assignment." Dkt. 70-5 at 11. The IP Assignment, in turn, defines "Marks" as "trademarks … whether registered or unregistered … together with all applications and registrations identified therewith … all licenses and similar contractual rights with respect to any of the foregoing granted by Assignor to any third party …" Dkt. 70-6 at 2. In short, the Asset Purchase Agreement and the Intellectual Property Assignment it references is silent on whether "Intellectual Property" includes collateral contractual litigation rights associated with the trademarks explicitly defined in "Intellectual Property." The AHOT defendants argue that this absence clearly and unambiguously precluded plaintiff's acquisition of GPC's contractual rights under the two Settlement Agreements. AHOT Reply at 9-10. The Court disagrees. While the AHOT defendants' interpretation is reasonable, the Court finds that the Asset Purchase Agreement's language is "reasonably susceptible" to the opposite interpretation. Winet v. Price, 6 Cal. Rptr. 2d 554, 557 (1992). Interpreting the Asset Purchase Agreement "as a whole," Saheli, 21 Cal.App.5th at 230, the Court finds that given the large extent of GPC's transfer of its asserts under the Asset Purchase Agreement (seemingly the *entirety* of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | Date | October 6, 2025 |
|---|---|---|---|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | |

GPC's inventory and intellectual property) to plaintiff, it is reasonable to interpret that
GPC intended to transfer to plaintiff all contractual rights associated with its intellectual
property as well, namely, GPC's rights under the Settlement Agreements with the AHOT
defendants. Furthermore, such an interpretation would be inconsistent with the Asset
Purchase Agreement's explicit acknowledgement that "[GPC] is in the process of selling
its assets and dissolving its business, including [GPC's] corporate existence" and "wishes
to sell to [plaintiff] … certain assets used in connection with the Business." Dkt. 70-5 at
1. The Court thus finds that interpreting "Intellectual Property" in the Asset Purchase
Agreement to encompass settlement rights associated with such intellectual property
could reasonably "give effect to the mutual intention of the parties." Byrne, Cal. Rptr. 2d
908 at 916. Given this ambiguity in the Asset Purchase Agreement, summary judgment
on plaintiff's breach of contract claim is improper as the ambiguity gives rise to a
genuine dispute as to whether plaintiff is a "successor" to GPC within the meaning of the
Settlement Agreements.

The Court is also unpersuaded by the AHOT defendants' argument that the
testimony of the contracting parties—Roesch and McComb—is incompetent parol
evidence. AHOT Reply at 10. Under California law, "parol evidence concerning the
terms not specifically included in the written agreement is generally not permitted. …
However, the parol evidence rule does not bar extrinsic evidence to interpret the meaning
of express terms. … [if the] contract [is] ambiguous and reasonably susceptible to [an
alternative] proffered meaning. 'Whether the written contract is reasonably susceptible of
a proffered meaning is a matter of law that is reviewed de novo.'" In re Bennett, 298
F.3d 1059, 1064 (9th Cir. 2002) (citation omitted). Because the Court finds that the
relevant agreement—the Asset Purchase Agreement—is ambiguous and reasonably
susceptible to Roesch and McComb's proffered meaning, the Court may consider Roesch
and McComb's testimony in interpreting the Asset Purchase Agreement. Their testimony
reinforces the interpretation of the Asset Purchase Agreement as assigning all rights of
GPC related to the Grover marks—including contractual rights under the First and
Settlement Agreements—to plaintiff. See Resp. 2 ¶ 42.

Accordingly, the AHOT defendants are not entitled to summary judgment on
plaintiff's breach of contract claim on the basis that plaintiff lacks standing to enforce the
First and Second Settlement Agreements.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**        **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | Date | October 6, 2025 |
|----------|------------------------|------|------------------|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | |

2.        Abandonment Defense

The AHOT defendants argue that GPC abandoned its trademarks before attempting to assign them to plaintiff; therefore, they argue that plaintiff's trademark claims fail. Mot. at 17 (citing 15 U.S.C. § 1127, which states that a mark is "abandoned" if "[1] its use has been discontinued with [2] intent not to resume such use."). First, the AHOT defendants argue that GPC ceased using the Grover marks no later than March 29, 2022 and before plaintiff's formation in November 2022. Id. at 17-19. They argue that "the uncontroverted evidence conclusively establishes GPC has not sold any products—much less any product bearing one of the trademarks at issue—since March 29, 2022." Id. at 18. "Three days later, GPC filed its Certificate of Election to 9 Wind Up and Dissolve." Id. The AHOT defendants argue that "[n]early eight months elapsed between when GPC sold its last product and Plaintiff's formation in November 2022." Id. at 18-19.

Second, the AHOT defendants argue that GPC never intended to resume use of the Grover marks. Id. at 19. They argue that GPC failed to take the necessary steps to maintain the use of its marks and affirmatively expressed its intent to not resume its use. See id. at 20-21. They further argue that "GPC did not take any action asserting its trademark rights in the four years leading up to its dissolution, further evidencing its intent to abandon." Id. at 21 (citing Slb Toys USA, Inc. v. Wham-O, Inc., 2007 WL 10132411, at *2 (C.D. Cal. 2007)). The AHOT defendants also argue that plaintiff has failed to present evidence to refute GPC's abandonment of its trademarks beyond offering "self-serving testimony [regarding GPC's intent to use its trademarks even if GPC ceased operating]," which "is insufficient to raise a fact issue as to abandonment." Id. at 23. Moreover, they argue that "[t]he only relevant evidence [p]laintiff has identified for the entire year after April 1, 2022 [when defendant argues that GPC abandoned its marks] [are] screenshots of non-party GPC's phantom online presence." Id. at 24. They argue that such "negligible use for the sole purpose of 'reserving' a mark is insufficient to avoid abandonment." Id. (citing Uncas Mfg. Co. v. Clark & Coombs Co., 309 F.2d 818, 820 (1st Cir. 1962)).

In opposition, plaintiff argues that the Grover marks were never abandoned by GPC. Opp. to mot. at 14. First, plaintiff argues that "use of the Grover Marks has been continuous." Id. at 16. Plaintiff argues that "Grover Products business operated as it had for decades through March 2022" and even after April 1, 2022, when GPC signaled an intent to eventually dissolve, GPC "continued to make sales, ship products, and assemble

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | Date | October 6, 2025 |
|----------|----------------------|------|-----------------|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | |

new inventory even while working toward completing the [Asset Purchase Agreement] transaction." Id.  Plaintiff also argues that "the sales and uses of the Grover Marks by licensee TAHG … [are] alone … sufficient to defeat abandonment." Id.  Plaintiff argues "that TAHG has held, from 2017 through today, both an express oral license and an implied license to use the Grover Marks." Id.  Moreover, "[GPC] exercised control over TAHG's activities because McComb was an employee of [GPC] who reported about his TAHG activities. The parties' family relationship and years working together permitted Grover Products to rely on McComb's judgment and expertise to properly manage use of the Grover Marks." Id. at 18.  Plaintiff argues that:

> Once Plaintiff acquired ownership under the November 25, 2022 [Asset Purchase Agreement], TAHG became a licensee of Plaintiff, without the need for a written agreement. … Because McComb was the sole owner of both TAHG and Plaintiff, TAHG retained a license for its activities to use and promote the Grover Marks. … As a licensee, TAHG marketed and sold products under the Grover Marks before, during, and after 2022.

Id. at 18.

Second, plaintiff argues that even if the use of Grover Marks was not continuous, plaintiff can establish that "no intent to abandon the Grover Marks has ever existed." Id.  "First, prior to and during 2022, Kristen Roesch was exploring the possibility of selling the company (and its attendant IP). … McComb repeatedly expressed interest and by May 2, 2022 had provided a purchase offer and business plan to the attorneys of Grover Products, who worked, over several months, to finalize the sale in November 2022." Id. at 18-19.

Moreover, plaintiff argues that "neither the filing of a Certificate of Intent nor communications to customers stating that Grover Products intended to eventually stop operating prove abandonment" because "[e]vidence of intent not to resume use, without evidence of nonuse, is insufficient.'" Id. at 19 (quoting eMachines, 2001 WL 456404, at *10).  Plaintiff argues that "[t]hroughout 2022 both Grover Products and its licensee TAHG continuously used the Grover Marks by making sales, advertising online, shipping products, etc." Id.  Finally, plaintiff argues that "[d]efendants' claim that a change in enforcement efforts constitutes abandonment or an intent not to use (Mot. at 20-22) is meritless." Id. at 20 (stating that the AHOT defendants' cited cases involve trademark owners' nonuse of their trademarks for three years or longer).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | Date | October 6, 2025 |
|---|---|---|---|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | |

In reply, the AHOT defendants argue that "[p]laintiff's '[e]xpress [o]ral [l]icense and [i]mplied [l]icense' of [c]onvenience [t]heory [f]ails to [r]ebut [a]bandonment." AHOT Reply at 12. They argue that "[p]laintiff unequivocally characterizes the relationship between non-party GPC and non-party Drop, Inc. as—at most—a gratuitous implied license." Id. at 13. "As a result, the purported oral license between non-party GPC and non-party Drop, Inc. could only extend so long as GPC continued to act as a licensor—that is only so long as GPC continued controlling the quality of goods sold under the licensed marks." Id. (citing Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc., 289 F.3d 589, 595 (9th Cir. 2002)). The AHOT defendants argue that "[t]he evidence indisputably shows that non-party GPC ceased controlling the quality of the goods sold under the Grover Marks by April 21, 2022 at the latest" because "[b]y that date, non-party GPC was selling its remaining parts on hand "on an 'as-is', 'where-is' basis' with no warranties of any kind.'" Id. (quoting dkt. 70-3). Because "[p]laintiff does not and cannot dispute that it did not exist on April 21, 2022, the date that non-party GPC indisputably elected to cease warranting the quality of its products—including those products sold in connection with the Grover Marks," "Plaintiff fails to raise a genuine dispute of material fact on [the] AHOT Defendants' abandonment defense." Id. at 15.

Abandonment is a defense to a claim of infringement of a registered trademark. 15 U.S.C. § 1115(b)(2). The Lanham Act provides for two ways that a trademark may be abandoned, namely, through (1) nonuse, or (2) the mark becoming generic. See 15 U.S.C. § 1127. "To show abandonment by nonuse, the party claiming abandonment must prove both the trademark owner's (1) 'discontinuance of trademark use' and (2) 'intent not to resume such use.'" Grocery Outlet Inc. v. Albertson's Inc., 497 F.3d 949, 951 (9th Cir. 2007) (citation omitted). Even a "single instance of use is sufficient against a claim of abandonment of a mark if such use is made in good faith." Carter–Wallace, Inc. v. Procter & Gamble Co., 434 F.2d 794, 804 (9th Cir.1970). "Legitimate commercial transport or sales of trademarked goods, even for a failing business, are sufficient to defeat a claim of abandonment." Electro Source, LLC v. Brandess-Kalt-Aetna Grp., Inc., 458 F.3d 931, 933 (9th Cir. 2006). "All bona fide uses in the ordinary course of business must cease before a mark is deemed abandoned." Wells Fargo & Co. v. ABD Ins. & Fin. Servs., 758 F.3d 1069, 1072 (9th Cir. 2014). Moreover, "[i]t is well-established that '[a] trademark owner may grant a license and remain protected [against claims of abandonment] provided quality control of the goods and services sold under the trademark by the licensee is maintained.'" Barcamerica Int'l USA Tr. v. Tyfield Importers, Inc., 289 F.3d 589, 595 (9th Cir. 2002) (citation omitted). "'[C]ourts have

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | Date | October 6, 2025 |
|---|---|---|---|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | |

upheld licensing agreements where the licensor is familiar with and relies upon the licensee's own efforts to control quality.'" Id. at 596 (citation omitted). "In order for a licensor to rely on the licensee's quality control efforts, the Ninth Circuit requires that the licensor and licensee be involved in a 'close working relationship' to establish adequate quality control in the absence of a formal agreement." Wallack v. Idexx Lab'ys, Inc., No. 11CV2996-GPC KSC, 2015 WL 5943844, at *11 (S.D. Cal. Oct. 13, 2015) (citations omitted). "[U]nless the trademark use is actually terminated, the intent not to resume use prong of abandonment does not come into play." Electro Source, 458 F.3d at 937–38.

Here, plaintiff has produced competent evidence establishing that GPC did not abandon its marks because its licensee's use of the marks was continuous at the time that GPC sold its marks to plaintiff on November 23, 2022. See Resp. 1 ¶ 28. Specifically, plaintiff presents evidence that TAHG was an oral or implied licensee of GPC, dkt. 93-22, McComb Decl. ¶¶ 20-22; 37, and that TAHG made continuous sales of Grover products from 2021 through 2023. Resp. 1 ¶ 13; dkt. 80-11. Moreover, plaintiff has provided evidence that GPC exercised quality control over TAHG's sales activities by virtue of GPC and TAHG being in a "close working relationship." See Wallack v. Idexx Lab'ys, Inc., 2015 WL 5943844, at *11. Specifically, plaintiff provides evidence that Grant McComb was a GPC employee at the same time that he managed TAHG, which he founded and owned. Dkt. 80-22, Roesch Decl. ¶ 7; dkt. 93-22, McComb Decl. ¶ 2. Moreover, plaintiff has provided evidence of a familial relationship between the senior officers of GPC and TAHG. Dkt. 93-22, McComb Decl. ¶ 3 (stating that McComb and GPC's then CEO Kristen Roesch are descendants of Clarence Roesch). Furthermore, plaintiff has provided evidence that TAHG's owner McComb and GPC's then CEO Kristen Roesch had worked extensively together and that Roesch "trusted [McComb] completely because he was a family member and because he had proven that he would use the Grover Marks appropriately during his years of work for [GPC]." Dkt. 80-22, Roesch Decl. ¶ 7.

Viewing the facts in the light most favorable to the plaintiff, the Court finds that a rational jury could conclude that GPC exercised adequate quality control over TAHG's use of GPC's marks and that TAHG continuously used the marks in commerce at the time that GPC sold the marks to plaintiff. Because a jury could find that GPC's "trademark use [was never] actually terminated, the intent not to resume use prong of abandonment does not come into play." Electro Source, 458 F.3d at 937-38. Accordingly, there is a genuine dispute as to whether GPC abandoned its marks before it

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | Date | October 6, 2025 |
|---|---|---|---|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | |

sold them to plaintiff, precluding summary judgment on the issue.  Anderson, 477 U.S.
242 at 250.

        3.    Lanham Act Claims

      The AHOT defendants argue that plaintiff's inability to establish either use or a
likelihood of confusion doom its trademark infringement and counterfeiting claims.  Mot.
at 26.  First, they argue that Air Horns has not used the terms "STUTTERTONE,"
"stutter," "Stutter," "TRUKTONE," "truk," "Truk," "ORGANTONE," "organ," or
"Organ" once in interstate commerce since executing the Second Settlement Agreement
and that "Plaintiff has admitted that it is 'not currently aware' of any instance of [the]
AHOT Defendants using the exact words 'TRUKTONE,' 'STUTTERTONE,' or
'ORGANTONE' (*i.e.*, the terms Plaintiff alleges it has a trademark for)."  Id. at 27 (citing
SUF ¶ 44).  The AHOT defendants thus argue plaintiff's claims based on these three
marks fail as a matter of law.  Id.

      Regarding the GROVER mark, the AHOT defendants concede that "Air Horns has
used the term 'Grover style' on a total of two product listings."  Id. at 27-28 (citing SUF
¶ 45).  However, the AHOT defendants argue that "describing a product as 'Grover style'
is not trademark infringement because it is not confusing as a matter of law."  Id. at 28
(citing Murray v. Cable Nat'l Broadcasting Co., 86 F.3d 858, 860 5 (9th Cir. 1996)).
They argue that:

> This simple observation is reconfirmed by six years' worth of customer reviews.
> … Since November 19, 2018, Air Horns has received a grand total of ZERO
> reviews indicating that a customer believed they were purchasing a "real Grover
> product." (SUF ¶ 47). As a matter of law, Plaintiff must be able to produce some
> evidence of confusion during that period." Cohn, 281 F.3d at 842–43. Plaintiff
> cannot and has not. Instead, all Plaintiff mustered is screenshots of two product
> reviews that predate the 2014 First Settlement Agreement. (SUF ¶¶ 48–49).

Id. at 29.

      The AHOT defendants argue that multiple allegations in plaintiff's complaint "are
either [f]abricated or were [r]eleased in the [s]ettlement [a]greements."  Id. at 29.  They
argue that "a review of Air Horns' eBay customer feedback—where Plaintiff alleges
these 5 reviews originated—shows Air Horns has *never* received any of the following

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | Date | October 6, 2025 |
|---|---|---|---|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | |

feedback" from customers indicating confusing Air Horns products with Grover products. <u>Id.</u> at 30 (citing SUF ¶ 50). Moreover, the AHOT defendants argue that "reviewing the seller profile produced by Air Horns's and the seller profile Plaintiff received from eBay lacks any instance of Air Horns either thanking 18 buyers "from groverairhorns.com" or even using the term "groverairhorns.com."" <u>Id.</u> The AHOT defendants state that "[r]egarding the 'Ordered a Grover Products horn, Received a replica from Taiwan' review, discovery revealed that the review predates the 2014 First Settlement Agreement under which non-party GPC entered releases related to those claims." <u>Id.</u> (citing SUF ¶ 48).

Finally, the AHOT defendants argue that plaintiff's counterfeiting claim fails because there is no evidence that defendants have applied a Grover mark to a single product. <u>Id.</u> at 31. To establish such a claim, they argue that "Plaintiff must prove that "(1) [the AHOT defendants] intentionally used a counterfeit mark in commerce; (2) knowing the mark was counterfeit; (3) in connection with the sale, offer for sale, or distribution of goods; and (4) [their] use was likely to confuse or deceive." <u>Id.</u> (quoting <u>State of Idaho Potato Com'n v. G & T Terminal Packaging, Inc.</u>, 425 F.3d 708, 721 (9th Cir. 2005)). The AHOT defendants argue that "'[a] defendant must allegedly have 'applied the mark' to its product to engage in counterfeiting.'" <u>Id.</u> (quoting <u>Boost Beauty, LLC v. Woo Signatures, LLC</u>, 2:18-cv-02960-CAS (Ex), 2019 WL 560277 at *6 (C.D. Cal. Feb. 11, 2019)). Here, they argue that "[t]here is no evidence that [the] AHOT [d]efendants ha[ve] physically affixed a Grover Mark to a single product that Air Horns has sold. Nor is there evidence that AHOT Defendants has physically affixed a colorable imitation of a Grover Mark to a single product that Air Horns has sold. Accordingly, Plaintiff's trademark counterfeiting claim fails as a matter of law." <u>Id.</u>

In opposition, plaintiff argues "[a]bundant [e]vidence of [t]rademark [i]nfringement and [c]ounterfeiting [e]xists." Opp. to mot. at 20. Plaintiff argues that "[d]espite repeatedly agreeing not to do so in prior Settlement Agreements, the AHOT Defendants began rampant use of the Grover Marks again." <u>Id.</u> "For example, the AHOT website includes a listing of "product tags" allowing users to quickly identify products they want to shop for. At least as early as 2022, this list included 'grover' and 'grover products' as two product options to shop." <u>Id.</u> at 21 (citing dkt. 85-14, Ex. 28 GROVER0000117-119). Plaintiff argues that "Clicking on the 'grover' and 'grover products' tag led consumers to new pages, both of which used 'grover' in the URL and listed an 'Emergency Tone' 24-inch chrome air horn." <u>Id.</u> at 22 (citing dkt. 85, McComb

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | Date | October 6, 2025 |
|---|---|---|---|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | |

Decl. ¶ 44). Plaintiff also argues that the "AHOT Defendants also advertised and sold a
'Truck Tone air horn kit' … [that] was substantially similar to Grover's 1601 Dual
Connected TRUKTONE® Horn (and the 1609 sister product)." Id. (citing dkt. 85-14,
Ex. 28, GROVER0000121-122, 136, 167-168; dkt. 85, McComb Decl. ¶¶ 47-48).
Plaintiff thus argues that the "AHOT Defendants have used the GROVER marks in a
counterfeiting and trademark sense to sell knockoff air horns and accessories," precluding
summary judgment. Id. at 23.

    Second, plaintiff argues that even though it is not required to present evidence of
actual confusion to establish its infringement and counterfeiting claims, id. at 23 (citing
Brookfield Commc'ns, Inc. v. W. Coast Ent. Corp., 174 F.3d 1036, 1050 (9th Cir. 1999)),
"[p]laintiff can demonstrate that customers are being tricked into buying products they
incorrectly think are genuine." Id. (citing dkt. 87-1, Ex. 29 that purportedly shows
customers mistakenly believing that AHOT sells "Grover" and "Stuttertone" products).

    Third, plaintiff argues that the AHOT defendants' prior wrongdoing was not
released by the Settlement Agreements because "content visible to consumers online at
the start of this litigation remains unlawful even if the AHOT Defendants originally
posted it years ago." See id. at 23. Furthermore, plaintiff argues that "[a]s to the marks
at issue, [p]laintiff has produced evidence that the AHOT Defendants have openly used
'grover' and 'Truck tone' and that purchasers believe they are receiving 'Stuttertone'
products from AHOT." Id. at 24. "As to ORGANTONE, Plaintiff knows AHOT has
used that mark in the past and is currently seeking evidence of recent use in discovery. …
Plaintiff offered to dismiss the portion of its claims relating to ORGANTONE without
prejudice before the filing of this motion, but movants chose instead to move for
summary judgment." Id.

    Fourth, regarding its counterfeiting claim, plaintiff argues that "'[t]here is no
statutory requirement that the counterfeit mark be placed on the product itself.'" Id.
(quoting Tiffany and Co. v. Costco Wholesale Corp., 127 F.Supp.3d 241, 255 (S.D.N.Y.
2015), vac'd and rem'd on other grounds, 971 F.3d 74; citing 15 U.S.C. §§ 1114, which
prohibits a counterfeit mark to be applied to a variety of things other than product itself,
including "labels, signs, prints, packages, wrappers, receptacles or advertisements" and
prohibits the mark be used "on or in connection with" the good). Plaintiff further argues
that other courts (including those in this district) "have similarly held counterfeiting may
be found where a mark is used not 'on' but alongside a product in a manner likely to

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**               **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | Date | October 6, 2025 |
|----------|------------------------|------|-----------------|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | |

deceive a consumer into believing they are getting a genuine article." Id. at 25 (citing cases). Plaintiff argues that this Court's holding in Boost Beauty, LLC is inapplicable here because that case by arguing that the counterfeiting claim in that case "was predicated on use of the mark as a Google AdWord" and "Google AdWords are not visible to consumers and are dissimilar to 'signs' or 'advertisements' as referenced in 15 U.S.C. § 1114." Id. (citing 2019 WL 560277 at *6).

In reply, the AHOT defendants argue that "[p]laintiff has brazenly continued its bad faith prosecution of either fabricated or unequivocally released claims" by "improperly argu[ing] to the Court that it can continue to prosecute claims that predate the First Settlement Agreement and Second Settlement Agreement." AHOT Reply at 15-16 (quoting the Second Settlement Agreement stating that "Grover hereby releases and forever discharges AHOT, TAH, Jason Gabbert, Jana Hildreth and Gerald Gabbert … from any and all past or present claims … whether known or unknown, from the beginning of time to the Effective Date …."). They further argue that "Plaintiff attempts to point to Air Horns of Texas, LLC's use of the numbers '1087', '1094', '1510', '1512', '1522', '1720', '1601', and '1609' to substantiate its trademark infringement theories, even though Plaintiff does not and cannot dispute that it lacks a trademark in any of those numbers. (Compare Doc. No. 81, at 21–23, with Doc. No. 82, at SUF Nos. 52, 54, 57, 58, 60, 61, 78, 79)." Id. at 17. The AHOT defendants argue that "Plaintiff has failed to identify a single instance of [the] AHOT Defendants using either the ORGANTONE® or STUTTERTONE® marks at any point since the Effective Date of the Second Settlement Agreement. (Doc. No. 82, at SUF No. 44)." Id. at 18. They argue that "the closest [AHOT] has come to using the inherently distinctive term 'TRUKTONE' is to describe an air horn designed for use on a personally owned vehicle truck as a 'Truck tone air horn kit.'" Id.

"To prevail on a claim for trademark infringement under the Lanham Act, a plaintiff must prove: (1) ownership of a valid trademark; (2) use of the mark without its consent; and (3) that such use is likely to cause confusion." Credit One Corp. v. Credit One Financial, Inc., 661 F.Supp.2d 1134, 1137 (C.D. Cal. 2009); see also Rearden LLC v. Rearden Commerce, Inc., 683 F.3d 1190, 1202 (9th Cir. 2012) ("To prevail on its Lanham Act trademark claim, a plaintiff must prove: (1) that it has a protectible ownership interest in the mark; and (2) that the defendant's use of the mark is likely to cause consumer confusion." (quotation marks omitted)); 15 U.S.C. § 1114(1).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | | Date | October 6, 2025 |
|---|---|---|---|---|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | | |

"Counterfeiting is a more specialized case of trademark infringement because a counterfeit 'is a spurious mark which is identical with, or substantially indistinguishable from, a registered mark.' 15 U.S.C. § 1127; see also 4 McCarthy on Trademarks and Unfair Competition § 25:10 (4th ed.) ('[C]ounterfeiting is "hard core" or "first degree" trademark infringement and is the most blatant and egregious form of "passing off." As Judge Scheindlin put it, counterfeiting is an aggravated form of trademark infringement "that seeks to trick the consumer into believing he or she is getting the genuine article[.]"')." UL LLC v. Space Chariot Inc., 250 F. Supp. 3d 596, 607-08 (C.D. Cal. 2017). To prevail on its trademark counterfeiting claim, Plaintiff must prove that "(1) [the AHOT defendants] intentionally used a counterfeit mark in commerce; (2) knowing the mark was counterfeit; (3) in connection with the sale, offer for sale, or distribution of goods; and (4) [their] use was likely to confuse or deceive." G & T Terminal Packaging, Inc., 425 F.3d at 721.

To prevail on a claim of false designation of origin, a plaintiff must show that "'(1) defendant uses a designation (any word, term, name, device, or any combination thereof) or false designation of origin; (2) the use was in interstate commerce; (3) the use was in connection with goods or services; (4) the designation or false designation is likely to cause confusion, mistake, or deception as to (a) the affiliation, connection, or association of defendant with another person, or (b) as to the origin, sponsorship, or approval of defendant's goods, services, or commercial activities by another person; and (5) the plaintiff has been or is likely to be damaged by these acts.'" Zamfir v. Casperlabs, LLC, 528 F. Supp. 3d 1136, 1143 (S.D. Cal. 2021) (citations omitted).

Here, plaintiff has provided evidence that the AHOT defendants have engaged in trademark infringement, counterfeiting, and false designation or origin of plaintiff's trademarks since the effective date of the Second Settlement Agreement. Plaintiff provides evidence that in July 2024, the AHOT website included a listing of "product tags" allowing users to identify products they want to shop for and that this listing included "grover" and "grover products" as two options to shop. Dkt. 85-14, GROVER0000117-119. Plaintiff has provided evidence that "[c]licking on the 'grover' and 'grover products' tag led consumers to new pages, both of which used 'grover' in the URL and listed an 'Emergency Tone' 24-inch chrome air horn" product that had specifications such that a jury could conclude the product is "substantially similar to Grover's 1510 Stuttertone® Emergency Air Horn." Dkt. 93-22, McComb Decl. ¶ 44-46.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | | Date | October 6, 2025 |
|---|---|---|---|---|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | | |

In other words, plaintiff provides evidence that AHOT attempted to pass off its products
as genuine Grover products.

Plaintiff has also provided evidence that AHOT advertised and sold a "Truck Tone"
air horn kit." Dkt. 85-14, GROVER0000121-22, 136, 281-82. Plaintiff has provided
evidence that this product was substantially similar to Grover's 1601 Dual Connected
TRUKTONE® Horn (and the 1609 sister product). Dkt. 93-22, McComb Decl. ¶¶ 47-48
(noting both AHOT's and Grover's products were dual connected horns—just over 15"
and 13", respectively—with a chrome finish (or black for the 1609).).

Moreover, plaintiff has provided evidence that several of the fourteen products that
the AHOT defendants were selling on eBay in July 2024 were being advertised using
Grover model numbers, dkt. 103-1, GROVER0000092-95 (AHOT eBay storefront
selling products with "1510," "1512," "1522"), and that in the preceding six months, the
AHOT defendants had sold products advertised using "Grover style." See id. at
GROVER0000203-08.

This evidence, considered alongside other evidence provided by plaintiff, supports
claims for trademark infringement under the Lanham Act. First, plaintiff has provided
evidence that it owns at least some of the relevant trademarks that it alleges the AHOT
defendants have infringed. Plaintiff has provided the Asset Purchase Agreement by
which GPC transferred ownership of "any trademarks and service marks used by [GPC]
…" to plaintiff. Dkt. 79-5 at 11. The Intellectual Property Assignment indicates that
these trademarks include the Grover logos and brand names (STUTTERTONE,
TRUKTONE, ORGANTONE, etc.). Dkt. 70-6 at 2, GROVER0000074-75. Second,
plaintiff has provided evidence that AHOT used these marks, or "confusingly similar"
marks, see GoTo.com, Inc. v. Walt Disney Co., 202 F.3d 1199, 1205 (9th Cir. 2000),
without plaintiff's consent; specifically, AHOT's use of "grover," "grover products," and
"Grover style." See dkt. 93-22, McComb Decl. ¶¶ 43-49; dkt. 85-14, GROVER0000117-
119; dkt. 103-1, GROVER0000203-08. Third, the Court finds that a rational jury could
conclude that such use is likely to cause confusion. Although evidence of actual
confusion is not required in establishing an infringement claim, Brookfield Commc'ns,
174 F.3d at 1050, plaintiff has nonetheless provided evidence that customers of AHOT

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**         **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | | Date | October 6, 2025 |
|---|---|---|---|---|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | | |

products have confused them for genuine Grover products.[15]  See dkt. 103-1,
GROVER0000705-706 (consumer reviews saying "told made by Grover," "NOT
GROVER as listed," and asking if products "no longer saygrover?").  Therefore, plaintiff
has provided evidence that it may prevail on a claim for trademark infringement, see
Credit One Corp., 661 F.Supp.2d at 1137, precluding summary judgment in favor of the
AHOT defendants.

For similar reasons, plaintiff has provided competent evidence establishing all
elements of the false designation of origin claim.  Notably, given plaintiff's proffered
evidence, a jury could conclude that AHOT's use of the "Grover" text in the course of
selling AHOT products is likely to cause confusion as to the affiliation of AHOT with the
owner of the Grover mark and/or the origin, sponsorship, or approval of AHOT products
by the owner of Grover products.  See Zamfir, 528 F. Supp. 3d at 1143.

With regard to plaintiff's counterfeiting claim, plaintiff has also provided sufficient
evidence to defeat summary judgment on this issue.  Plaintiff has provided evidence that
AHOT used Grover marks—or a mark "substantially indistinguishable from" the
registered Grover marks, 15 U.S.C. § 1127, including AHOT's use of "grover," "grover
products," "Truck Tone," "Grover style"—in the course of advertising AHOT products
on its website and on eBay.  See dkt. 85-14, GROVER0000117-119; dkt. 85-14,
GROVER0000121-22, 136; dkt. 103-1, GROVER0000203-08.  Such use, viewed in a
light most favorable to plaintiff, satisfies the requirement for a counterfeiting claim that
defendant intentionally used a counterfeit mark in commerce "in connection with the
sale, offer for sale, or distribution of goods."  G & T Terminal Packaging, Inc., 425 F.3d
at 721; see also 15 U.S.C. §§ 1114 (stating that counterfeiting liability may be predicated
on the counterfeit mark being applied to "labels, signs, prints, packages, wrappers,
receptacles or advertisements intended to be used in commerce upon or in connection
with the sale, offering for sale, distribution, or advertising of goods or services on or in
connection with which such use.").  Here, the AHOT defendants' apparent use of the
Grover marks or confusingly similar marks on its website and on eBay fits comfortably

---

[15] Although it is unclear when this apparent confusion occurred (plaintiff's exhibit of
AHOT's eBay feedback profile merely indicates that the customer comments indicating
confusion were made "More than a year [before September 18, 2024]"), these comments,
viewed in light most favorable to the plaintiff, may be used to establish plaintiff's claim
for trademark infringement at this stage of the litigation.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**            **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | | Date | October 6, 2025 |
|---|---|---|---|---|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | | |

within the statutory requirement that the counterfeit mark be applied "in connection with the sale, offering for sale, distribution, or advertising of goods." Id.

While this Court has stated that "[a] defendant must allegedly have 'applied the mark' to its product to engage in counterfeiting," Boost Beauty, 2019 WL 560277, at *6, the Court made this statement in the context of a defendant who used variations of the plaintiff's trademarked product name "BoostLash" as a search engine adword: The defendant had allegedly purchased the Google AdWords 'boost' and 'lash' together in that order as a search engine advertisement to drive traffic to their website. Id. at *1, *3. Importantly, as plaintiff notes, the AdWords were not visible to consumers and are thus dissimilar to 'signs' or 'advertisements' as referenced in 15 U.S.C. § 1114. Opp. to mot. at 25. By contrast, plaintiff here has provided evidence that AHOT used the text "Grover" in advertising its products such that consumers would see the "Grover" text immediately preceding or directly adjacent to the online display and advertisement of AHOT products. See dkt. 85-14, GROVER0000117-119; dkt. 103-1, GROVER0000203-08. In other words, plaintiff has presented evidence that AHOT was attempting to "pass off" its products as Grover products and "'s[ought] to trick the consumer into believing he or she is getting the genuine article.'" UL LLC v. Space Chariot Inc., 250 F. Supp. 3d at 607-08 (citations omitted). See also Samick Music Corp. v. Gordon, No. SACV 20-395-GW-JDEX, 2020 WL 3210613, at *4 (C.D. Cal. Mar. 26, 2020) (finding counterfeiting where marks were on "marketing and communications materials," on websites and social media accounts, and on invoices and in emails); Tiffany & Co. v. Costco Wholesale Corp., 127 F. Supp. 3d 241, 255 (S.D.N.Y. 2015) (finding that plaintiff established trademark counterfeiting as a matter of law when defendant sold rings out of a display case showcasing the Tiffany mark despite that defendant had not stamped the rings themselves with the Tiffany mark).

Accordingly, because plaintiff has provided competent evidence for its trademark infringement, false designation or origin, and counterfeiting claims under the Lanham Act, the AHOT defendants' motion for summary judgment with respect to these claims is **DENIED**.[16]

---

[16] At oral argument, the AHOT defendants argued that they were entitled to partial summary judgment on plaintiff's claims against them based on the ORGANTONE and STUTTERTONE marks. It does not appear that plaintiff presented any argument in

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | Date | October 6, 2025 |
|---|---|---|---|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | |

### C.    Select-Tech

Select-Tech argues that plaintiff's claims based on the ORGANTONE mark lack any evidentiary basis. Joind. at 6-7. Second, Select-Tech argues that plaintiff's counterfeiting claim fails as a matter of law. Id. at 7-9. Select-Tech also argues that plaintiff's counterfeiting and infringement claims were extinguished due to GPC's abandonment of the Grover marks. Id. at 9-11. Finally, Select-Tech argues that plaintiff lacks standing to assert Section 1114 infringement and counterfeiting claims based on the GROVER and STUTTERTONE marks. Id. at 11-12.

### 1.    Claims Based on ORGANTONE Mark

Select-Tech argues that with respect to plaintiff's Lanham Act claims based on the ORGANTONE mark, plaintiff cannot demonstrate that it used a mark "in commerce ... in connection with the sale ... or advertising of any goods or services" under 15 U.S.C. § 1141(1)(a). Joind. at 6. Select-Tech argues that "there are no specific factual allegations in the FAC that Select-Tech used the ORGANTONE mark in commerce, let alone in conjunction with the advertising or sale of any goods" because "Plaintiff *admits* that it had no such evidence when the FAC was filed." Id. (citing JSUF ¶ 2) (emphasis in original). Select-Tech argues that "[p]laintiff did not identify the ORGANTONE mark[,] in response to interrogatories[,] as a mark that it contends Select-Tech allegedly 'has used without Plaintiff's authorization, infringed or counterfeited.'" Id. at 7. "Plaintiff also did not identify any facts to support its Lanham Act claims with respect to that mark. …

---

opposition to this aspect of the AHOT defendants' motion. Plaintiff is **ORDERED** to apprise the Court within fourteen days of this order regarding whether plaintiff opposes the AHOT defendants' motion for partial summary judgment with respect to claims against the AHOT defendants based on the ORGANTONE and STUTTERTONE marks. At oral argument, the AHOT defendants also argued that Texas Air Horns, LLC, Jason Gabbert, Jana Hildreth, and Gerald Gabbert are entitled to summary judgment on all claims against them. Similarly, it does not appear that plaintiff presented any argument in opposition to the motion to dismiss these defendants. Plaintiff is **ORDERED** to apprise the Court within fourteen days of this order regarding whether plaintiff opposes the AHOT defendants' motion for partial summary judgment with respect to all claims against Texas Air Horns, LLC, Jason Gabbert, Jana Hildreth, and Gerald Gabbert.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | Date | October 6, 2025 |
|---|---|---|---|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | |

Accordingly, the Court should grant partial summary judgment in favor of Select-Tech to
the extent that Plaintiff bases its Lanham Act claims on the ORGANTONE mark." Id.

In opposition, plaintiff argues that pursuant to Federal Rule of Civil Procedure
56(d), the Court should grant a continuance on Select-Tech's motion for partial summary
judgment on claims based on the ORGANTONE mark to enable plaintiff to conduct
discovery to substantiate such claims.  See opp. to joind. at 18.  Plaintiff states that
"[p]laintiff knows Select-Tech's supplier, AHOT, has marketed a 'knockoff'
ORGANTONE in the past, but does not yet have evidence—now as discovery is
ongoing—of use by Select-Tech."  Opp. to joind. at 18 (citing dkt. 87, Scott Decl. ¶ 12.)).
Plaintiff argues that "[s]ummary judgment on this small portion of Plaintiff's claim
would be inefficient while discovery remains open and should be denied."  Id. (citing dkt.
87, Scott Decl. ¶ 13).

In reply, Select-Tech argues that no continuance under Rule 56(d) should be
granted.  Select-Tech argues that "[plaintiff merely] speculates that because AHOT *might*
have used the ORGANTONE mark *in November 2012*, Select-Tech *might* have done the
same."  Select-Tech Reply at 4 (emphasis in original) (citing dkt. 79-2 at 18; dkt. 87 ¶
12).  Select-Tech argues that "[t]his is wholly insufficient to seek a continuance pursuant
to Rule 56[d], which requires an affidavit that identifies (1) the specific facts the
nonmoving party hopes to elicit from specific discovery devices; (2) the facts sought
exist; and (3) the sought-after facts are 'essential' to oppose summary judgment."  Id.
(citing Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp., 525 F.3d 822,
827 (9th Cir. 2008)).  Select-Tech argues that "there is no additional discovery for
[plaintiff] to obtain" in light of the fact that the parties' discovery efforts thus far have not
produced evidence demonstrating that Select-Tech used the ORGANTONE mark.  Id. at
4-5.

The Court finds it appropriate under Rule 56(d) to defer issuing a decision on
Select-Tech's motion with respect to plaintiff's claims based on the ORGANTONE
mark.  Rule 56(d) grants a court discretion to defer consideration of the motion for
summary judgment "[i]f a nonmovant shows by affidavit or declaration that, for specified
reasons, it cannot present facts essential to justify its opposition."  Fed. R. Civ. P. 56(d).
The party requesting a continuance must show: "(1) that they have set forth in affidavit
form the specific facts that they hope to elicit from further discovery, (2) that the facts

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | Date | October 6, 2025 |
|---|---|---|---|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | |

sought exist, and (3) that these sought-after facts are "essential" to resist the summary
judgment motion." California v. Campbell, 138 F.3d 772, 779 (9th Cir. 1998).

Here, plaintiff has set forth in an affidavit that "[it] has located evidence that the
AHOT Defendants wrongfully exploited the ORGANTONE trademark in the past." See
Dkt. 87, Scott Decl. ¶ 12 (citing a website forum in which a customer ostensibly stated in
a November 21, 2012 online post that "I ordered the Grover Organ Tone horns from
Jason Gabbert."). Moreover, plaintiff's affidavit states that "[t]he AHOT Defendants'
actions reflect that, at least in the past, its customers (including its reseller customer,
Select-Tech) have had access to AHOT's 'knockoff' ORGANTONE products.
Defendants have not yet produced any evidence of their use of ORGANTONE …
[though] the discovery period in this litigation does not close for another 45 days and no
depositions have yet been taken." Id. ¶ 13. Given the above, the Court finds it
appropriate to defer consideration of Select-Tech's motion for summary judgment on
plaintiff's claims based on the ORGANTONE mark.[17] See California v. Campbell, 138
F.3d at 779.

        2.    Lanham Act Claims

Select-Tech argues that "Plaintiff's claim for trademark counterfeiting also fails as
a matter of law with respect to all of the Grover Marks." Joind. at 7. Select-Tech argues
that to establish a counterfeiting claim, "[p]laintiff must prove "(1) [Select-Tech]
intentionally used a counterfeit mark in commerce; (2) knowing the mark was
counterfeit; (3) in connection with the sale, offer for sale, or distribution of goods; and (4)
its use was likely to confuse or deceive.'" Id. (quoting G & T Terminal Packaging, Inc.,
425 F.3d at 721). Select-Tech argues that "the AHOT products advertised and sold by
Select-Tech did not bear any of the Grover Marks"; "[n]one of the AHOT products
Plaintiff purchased from Select-Tech in February 2025 had any of the Grover Marks
physically affixed to them or to their packaging"; and plaintiff has failed to "produce[]
any evidence that any of the Grover Marks were affixed to any of the fifteen AHOT
products sold by Select-Tech." Id. at 7-8 (citing JSUF ¶ 3). Thus, Select-Tech argues

---

[17] Plaintiff is **ORDERED** to apprise the Court within fourteen days of this order
regarding by what date it will be in a position to present evidence it contends will
substantiate its claims against Select-Tech based on the ORGANTONE mark.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | Date | October 6, 2025 |
|----------|------------------------|------|-----------------|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | |

that plaintiff cannot establish the "use" requirement for its counterfeit claim against Select-Tech.  Id.

   In opposition, plaintiff argues that to bring a counterfeiting claim, there is no statutory requirement that the counterfeit mark be placed on the product itself.  Opp. to joind. at 12-13 (citing cases).  Plaintiff also argues that there is abundant evidence of Select-Tech's misconduct:

   Select-Tech uses the Grover Marks in connection with products that are nearly identical to those sold by Plaintiff to pass its products off as genuine. Select-Tech had knowledge of the Grover Marks beginning even before the September 2014 cease and desist communications. … Despite this knowledge, Select-Tech subsequently used the Grover Marks to sell air horn products nearly identical to those offered by Plaintiff.

   Select-Tech used title tags—used to identify a page for a user—with the GROVER mark. For example, Select-Tech used the title tag "Grover 1510 air horn" with a 24.5" chrome air horn … which is a replica of the product that Grover sells.

Id. at 13-14 (citing dkt. 85, McComb Decl. ¶ 46 (discussing Grover's 1510 Stuttertone® air horn); dkt. 87, Scott Decl. ¶ 6.).

   Moreover, plaintiff argues that "Select-Tech also used the GROVER Marks in its product catalog from 2011 through 2025, displaying the GROVER marks, STUTTERTONE and TRUKTONE."  Id. at 15 (citing dkt. 86-19, Ex. 37, GROVER0001822).  Plaintiff argues that "[t]he products are designed to look nearly identical to genuine GROVER® products. Select-Tech's model numbers all correspond to the same or substantially similar product offerings by Grover using the same model numbers."  Id. at 16 (citing website links to genuine Grover products).  Plaintiff further argues that Select-Tech additionally sold an "Air Horn Solenoid" with product code "Grover 1136," a "Grover Sound Unit Repair Kit" with a product code of "GROVER-1522," and a "Grover Air Horn Pedestal" "for Grover air horns."  Id.  "These products are replicas of products sold by Grover."  Id. at 17.

   Finally, plaintiff argues that Select-Tech took additional steps to pass off its products as genuine Grover products by affirmatively representing to its customers that it

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                              **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | Date | October 6, 2025 |
|---|---|---|---|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | |

was a Grover distributor.  Plaintiff argues that Select-Tech's "online product catalog (available from at least 2011 through the start of litigation) stated 'We are distributors for [] Grover Air Horns.'"  Id. at 17 (citing dkt. 87-2, Ex. 37, GROVER0001821-1822).  "Similarly, starting in 2017, Select-Tech's websites started touting that Select-Tech carries Grover products."  Id. at 17 (citing dkt. 87-2, Ex. 37, GROVER0001660).

In reply, Select-Tech argues that this Court in Boost Beauty, LLC, 2:18-cv-02960, 2019 WL 560277 at *6, and other courts in this district have "found that to succeed on a counterfeiting claim, a plaintiff must prove that a defendant applied plaintiff's marks to the alleged counterfeit products."  Select-Tech Reply at 5-6.  Select-Tech also argues that the cases cited by plaintiff do not lead to a contrary conclusion, and that the Court should disregard plaintiff's non-binding citation to Tiffany and Co., 127 F. Supp 3d 241, a Southern District of New York case that held that there is no statutory requirement that the counterfeit mark be placed on the product itself to establish a counterfeiting claim.  Id. at 6-9.

Regarding plaintiff's counterfeiting claim based on the TRUKTONE mark, Select-Tech further argues that "in order to assert a claim for counterfeiting, it must have a valid registration for the mark in question."  Id. at 9 (citing 15 U.S.C. § 1114(1)(b); 15 U.S.C. § 1127).  "As such, the earliest a counterfeiting claim based on the TRUKTONE mark could accrue is June 4, 2024, when Grover obtained a new federal registration for that mark."  Id.  "Grover does not identify any evidence of Select-Tech selling any AHOT products bearing the TRUKTONE mark at any time after June 4, 2024. Grover also admitted that the TRUKTONE mark was not applied to any of the AHOT products, their packaging or used in the accompanying documents it received from Select-Tech in February 2025."  Id. at 9-10.  Select-Tech further argues that "[e]ven assuming, *arguendo*, the physical application of the TRUKTONE mark on AHOT products was not required, Grover's counterfeiting claim based on this mark would still fail as a matter of law" because "the only evidence of Select-Tech allegedly using that mark offered by Grover is a PDF file constituting Select-Tech's 2011 Product Catalog."  Id. at 10.  However, Select-Tech argues that it "***removed*** this hyperlink from this landing page by May 21, 2017, which made the 2011 Catalog an "orphan" PDF file. … Consequently, customers could not directly download or access the catalog via www.fixmyambulance.com after May 2017, and more importantly, after the registration for the TRUKTONE mark issued in June 2024."  Id. (emphasis in original).  Select-Tech

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | Date | October 6, 2025 |
|---|---|---|---|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | |

argues that Grover could only locate Select-Tech's 2011 Catalog via a Google search in
February 2025 by using "fixmyambulence.com" (Select-Tech's web address) and
'Grover 1510' as search terms, thus "misleadingly suggest[ing] that an average consumer
was still likely to find the 2011 Catalog after Select-Tech removed it from its website."
Id. at 10-11 (citing Boost Beauty, 2019 WL 560277, at *7 and Hsiao & Montano, Inc. v.
Xstatic Pro Inc., Case No. CV 21-5430-MWF (Ex), 2023 WL 4205811, at *10 (C.D. Cal.
May 18, 2023) for the proposition that an "internet search term" cannot support a
counterfeiting claim as a matter of law).

Regarding plaintiff's counterfeiting claim based on the STUTTERTONE mark,
Select-Tech argues that "Grover fails to offer any evidence that Select-Tech sold any
AHOT products with the STUTTERTONE mark affixed to them." Id. at 11. Select-Tech
argues that "Grover further admits Select-Tech did not apply that mark to any of the
AHOT products, their packaging or the accompanying documents it received from
Select-Tech in February 2025." Id. at 11-12. Moreover, Select-Tech argues that "the
only evidence of Select-Tech using the mark that Grover cites is the same 2011 Catalog
found via a Google search. … As detailed above, that catalog has not been readily
accessible via Select-Tech's e-commerce site since May 2017, and Grover manufactured
the desired Google search result." Id. at 12. Select-Tech further argues that Select-
Tech's use of the STUTTERTONE mark is not likely to cause confusion or deceive
because Select-Tech's Catalog listed a product as "Grover 1510 Stutter Tone Air Horn,
Chrome, 24.5" long" and "[t]he only comparable AHOT product that was offered for sale
on Select-Tech's webstore was the AHT FT24/Air Horn 1510, listed as the "24.5"
Chrome Air Horn w/ Pedestal." Id. at 13. Finally, Select-Tech maintains that "Grover
does not offer any evidence of a customer ever using the 2011 Catalog to place an order
with Select-Tech for the equivalent AHOT product. Based on this record, no reasonable
trier of fact would conclude that the only cited use of the STUTTERTONE mark by
Select-Tech was likely to cause confusion." Id.

Regarding plaintiff's counterfeiting claim based on the GROVER mark, Select-
Tech argues that "Grover fails to offer any evidence that Select-Tech sold any AHOT
products with the GROVER mark affixed, and instead admits the same." Id. at 13.
Select-Tech argues that "statements that Select-Tech was a distributor of Grover products
and carried Grover parts relied upon by Grover do not amount to counterfeiting …
especially … [because] they were buried in small print on the 'about us' webpage and not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | Date | October 6, 2025 |
|---|---|---|---|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | |

on the webpages where a customer could purchase AHOT products from Select-Tech."
Id. at 14.  Moreover, Select-Tech argues that its listing of AHOT products using the same
model numbers as the equivalent Grover model numbers cannot form the basis of liability
because "it is undisputed that the model numbers are not registered marks."  Id. "Finally,
Grover's reliance on the 2011 Catalog to support its counterfeiting claim based on the
GROVER mark fails for the same reasons as stated above."  Id. at 15.

        The Court finds that plaintiff has provided competent evidence that Select-Tech
has engaged in trademark infringement, counterfeiting, and false designation or origin of
plaintiff's trademarks—including the STUTTERTONE, TRUKTONE, and GROVER
marks.  Plaintiff provides evidence that as early as June 4, 2017, Select-Tech's website
stated that "[w]e are a parts distributors for … Grover Air Horns." Dkt. 87, Scott Decl. ¶
6 (citing an archived Select-Tech website).  Plaintiff also provides evidence that on
February 7, 2025, Select-Tech's "About Us" webpage stated that "We carry parts for all
major ambulance manufacturers such as … Grover Air Horns …." Dkt. 87-2,
GROVER0001660.  Furthermore, plaintiff has provided evidence that on March 4, 2021,
Select-Tech's used the phrase "Grover 1510" as a title tag for one of its website pages
(visible to website visitors as the title of the browser tab) selling a "24.5" Chrome Air
Horn w/ Pedestal."  Id. (citing an archived Select-Tech website).  Plaintiff presents
evidence that "this product is a replica of the product that Grover sells." Dkt. 85,
McComb Decl. ¶ 46 (citing a website link to Grover's "1510 Stuttertone® Emergency
Air Horn, 24.5", Chrome" product).

        Moreover, plaintiff provides evidence that Select-Tech used other Grover marks in
its product catalog, displaying the GROVER logo, "Grover" text, "Stutter Tone," and
"Truktone" alongside images of products. Dkt. 86-19, Ex. 37, GROVER0001822.
Plaintiff provides evidence that this product catalog appeared in search engine results on
February 12, 2025 when users searched for "fixmyambulance.com [Select-Tech's
website] grover 1510" on Google. Dkt. 87, Scott Decl. ¶ 4; dkt. 87-4,
GROVER0001669).  Plaintiff provides evidence that the product model numbers listed in
this product catalog correspond to the same or substantially similar product offerings by
Grover using the same model numbers.  Opp. to Select-Tech at 16 (citing names of
genuine Grover products).

        Plaintiff provides evidence that as of January 28, 2025, Select-Tech's website sold
an "Air Horn Solenoid" with product code "Grover 1136," a "Grover Sound Unit Repair

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | Date | October 6, 2025 |
|---|---|---|---|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | |

Kit" with a product code of "Grover-1522," and a "Grover Air Horn Pedestal" "for Grover air horns." Dkt. 87-2, GROVER0001665. Plaintiff provides evidence that these products are replicas of products sold by Grover. Opp. to Select-Tech (citing names of and website links to genuine Grover products).

Additionally, plaintiff provides evidence that a customer ("Kris Roe") who purchased Select-Tech's products from its website on February 3, 2025 received purchase confirmation emails or invoices stating that she had purchased a "Grover-1522" identified as a "Grover Sound Unit Repair Kit" and a "Grover-1720" identified as a "Grover Air Horn Pedestal." Dkt. 86, Roesch Decl. ¶ 38; dkt. 86-21, GROVER0006437.

This evidence, considered alongside other evidence provided by plaintiff, supports claims for trademark infringement under the Lanham Act. See Credit One Corp., 661 F.Supp.2d at 1137; see also Rearden LLC, 683 F.3d at 1202. First, plaintiff has provided evidence that it owns the relevant trademarks that it alleges Select-Tech has infringed. Plaintiff has provided the Asset Purchase Agreement in which GPC transferred ownership of "any trademarks and service marks used by [GPC] …" to plaintiff. Dkt. 79-5 at 11. The Intellectual Property Assignment indicates that these trademarks include the Grover logos and brand names (STUTTERTONE, TRUKTONE, ORGANTONE, etc.). Dkt. 70-6 at 2. Second, plaintiff has provided evidence that Select-Tech used these marks, or "confusingly similar" marks, see GoTo.com, Inc., 202 F.3d at 1205, without plaintiff's consent; specifically, Select-Tech used the GROVER logo, "Grover" text, "Stutter Tone," and "Truktone" on its website and/or product catalog. See, e.g., dkt. 86-19, Ex. 37, GROVER0001822. Third, the Court finds that a rational jury could conclude that such use is likely to cause confusion. Evidence of actual confusion is not required in establishing an infringement claim. Brookfield Commc'ns, 174 F.3d at 1050. Plaintiff has provided evidence such that a jury could find that products sold by Select-Tech are replicas with similar names to and designed to look nearly identical to genuine Grover products. Compare dkt. 86-19, Ex. 37, GROVER0001822 (displaying Select-Tech's product catalog), with opp. to Select-Tech at 16 (citing names of genuine Grover products).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                              **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | Date | October 6, 2025 |
|----------|------------------------|------|------------------|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | |

This conclusion is not affected by Select-Tech's argument that plaintiff could only locate Select-Tech's product catalog[18] via a Google search in February 2025 by using

---

[18] At oral argument, Select-Tech also argued that the Court should not consider the product catalog on the independent ground that it could not be presented in a form that would be admissible in evidence (citing Unicolors Inc. v. Connection 18 by Sicura, No. CV 15-03650-BRO (JPRX), 2016 WL 11760221, at *3 (C.D. Cal. Aug. 15, 2016); Suarez Corp. Indus. v. Earthwise Techs., Inc., 636 F. Supp. 2d 1139, 1147 (W.D. Wash. 2008)). The cases Select-Tech cite to are unavailing. In Unicolors Inc., the court sustained plaintiff's objection to defendant's use of images of garments that defendant allegedly found from an internet search because the images "lack[ed] foundation and personal knowledge and [we]re not authenticated" and because the images were inadmissible hearsay. 2016 WL 11760221, at *2. The court suggested that the images were not properly authenticated because the defendant did "not indicate who performed the search, the parameters of the search, or when the search was performed." Id. By contrast, plaintiff here has provided these details for how it obtained the Select-Tech product catalog. See dkt. 87, Scott Decl. ¶ 4; dkt. 87-4, GROVER0001669; dkt. 86-19, GROVER0001822. Furthermore, even if the Select-Tech catalog in its current form is not properly authenticated, it is not clear that the contents of the catalog could not be presented in an admissible form at trial. Thus, the catalog's contents should not be excluded at the summary judgment stage. See Fraser, 342 F.3d at 1036-37. Suarez Corp., 636 F. Supp. 2d 1139, is likewise inapposite here. In that case, the defendant opposing plaintiffs' motion for summary judgment moved to strike plaintiff's exhibit consisting of emails offered to demonstrate the apparent confusion of defendants' customers and not to prove the truth of the matters asserted in the emails. Id. at 1143. Therefore, the Suarez Corp. court denied the defendant's motion to strike on hearsay grounds. Id. The court did, however, grant defendant's motion to strike portions of the exhibit that "consist[ed] of usage statistics and purport[ed] to show the number of hits on [defendant's] websites that were generated by certain Internet searches," finding that such statistics did not satisfy the business records hearsay exception under Federal Rule of Evidence 803(6). Id. at 1144. The evidentiary rulings in Suarez Corp. are not applicable to Select-Tech's product catalog here, which does not consist of emails indicating customer confusion or statistics on hits on websites generated by certain Internet searches. As stated, it is not clear that the contents of the Select-Tech catalog could not

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | | Date | October 6, 2025 |
|---|---|---|---|---|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | | |

"fixmyambulence.com" (Select-Tech's web address) and "Grover 1510" as search terms, thus "misleadingly suggest[ing] that an average consumer was still likely to find the 2011 Catalog after Select-Tech removed it from its website." Select-Tech Reply at 10-11. Such evidence may tend to suggest that consumer confusion is not "likely," but a genuine dispute nonetheless remains as to whether Select-Tech's use of the Grover marks is likely to cause customer confusion, precluding summary judgment. See Anderson, 477 U.S. at 249 ("[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.").

For similar reasons, plaintiff has provided competent evidence establishing all elements of the false designation of origin claim. Notably, given plaintiff's proffered evidence, a jury could conclude that Select-Tech's use of the "Grover" text in the course of selling Select-Tech products is likely to cause confusion as to the affiliation of Select-Tech with the owner of the Grover mark and/or the origin, sponsorship, or approval of Select-Tech products by the owner of Grover products. See Zamfir, 528 F. Supp. 3d at 1143.

With regard to plaintiff's counterfeiting claims, plaintiff has also provided sufficient evidence to defeat summary judgment on this issue. Plaintiff has provided evidence that Select-Tech used Grover marks—or a mark "substantially indistinguishable from" the registered Grover marks, 15 U.S.C. § 1127, including Select-Tech's use of the GROVER logo, "Grover" text, "Stutter Tone," and "Truktone"—in the course of advertising Select-Tech products on its website and/or product catalog. See, e.g., dkt. 87-2, GROVER0001654. Such use, viewed in a light most favorable to plaintiff, satisfies the requirement for a counterfeiting claim that Select-Tech intentionally used a counterfeit mark in commerce "in connection with the sale, offer for sale, or distribution of goods." G & T Terminal Packaging, Inc., 425 F.3d at 721; see also 15 U.S.C. §§ 1114 (stating that counterfeiting liability may be predicated on the counterfeit mark being applied to "labels, signs, prints, packages, wrappers, receptacles or advertisements intended to be used in commerce upon or in connection with the sale, offering for sale, distribution, or advertising of goods or services on or in connection with which such use."). Here, Select-Tech's apparent use of the Grover marks or confusingly similar marks on its

---

be presented in an admissible form at trial. Accordingly, the catalog's contents should not be excluded at the summary judgment stage. See Fraser, 342 F.3d at 1036-37.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**              **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | Date | October 6, 2025 |
|---|---|---|---|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | |

website and product catalog fits comfortably within the statutory requirement that the
counterfeit mark be applied "in connection with the sale, offering for sale, distribution, or
advertising of goods." Id.

As discussed above, supra IV.B.2.c, Boost Beauty, 2019 WL 560277 is inapposite.
Unlike the Boost Beauty defendant who used variations of the plaintiff's trademarked
product name as a search engine adword that was not visible to consumers, id. at *6,
plaintiff here has provided evidence that Select-Tech here used the Grover marks in
advertising its products such that consumers would see the marks immediately adjacent to
the online display and advertisement of Select-Tech products. See, e.g., Dkt. 86-19, Ex.
37, GROVER0001822; Dkt. 87-2, GROVER0001654. Moreover, plaintiff here has
provided evidence that a customer who purchased Select-Tech's products from its
website received purchase confirmation emails or invoices stating that she had purchased
"Grover" products. Dkt. 86, Roesch Decl. ¶ 38; dkt. 86-21, GROVER0006437. In other
words, plaintiff has presented evidence that Select-Tech was attempting to "pass off" its
products as Grover products and "'s[ought] to trick the consumer into believing he or she
is getting the genuine article.'" UL LLC v. Space Chariot Inc., 250 F. Supp. 3d at 607-08
(citations omitted). See also Samick Music, 2020 WL 3210613, at *4 (finding
counterfeiting where marks were on "marketing and communications materials," on
websites and social media accounts, and on invoices and in emails); Tiffany & Co., 127
F. Supp. 3d at 255 (finding that plaintiff established trademark counterfeiting as a matter
of law when defendant sold rings out of a display case showcasing the Tiffany mark
despite that defendant had not stamped the rings themselves with the Tiffany mark).

The Court finds unpersuasive Select Tech's argument that plaintiff's counterfeiting
claim based on the TRUKTONE mark fails as a matter of law because "Grover does not
identify any evidence of Select-Tech selling any AHOT products bearing the
TRUKTONE mark at any time after June 4, 2024 [when Grover obtained a new federal
registration for the mark]." Select-Tech Reply at 9. Select-Tech is correct that in order
to assert a claim for counterfeiting, plaintiff must have a valid registration for the mark in
question, see 15 U.S.C. § 1114(1)(b); 15 U.S.C. § 1127 ("[a] 'counterfeit' is a spurious
mark which is identical with, or substantially indistinguishable from, *a registered mark*")
(emphasis added). However, this fact does not justify entering summary judgment on
plaintiff's counterfeiting claim based on the TRUKTONE mark. It is undisputed that
Select-Tech sold a total of fifteen different AHOT products between January 1, 2011 and
February 28, 2025. Select-Tech Resp. 1 ¶ 1. Plaintiff has also provided evidence that

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | Date | October 6, 2025 |
|----------|----------------------|------|-----------------|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | |

Select-Tech used the term "Truktone" in an online product catalog (alongside images of
its products) that was accessible from search engine results on *February 12, 2025* when
users searched for "fixmyambulance.com [Select-Tech's website] grover 1510" on
Google.  Dkt. 87, Scott Decl. ¶ 4; dkt. 87-4, GROVER0001669; dkt. 86-19,
GROVER0001822.  Viewing the facts in a light most favorable to plaintiff, the Court
finds that a jury could conclude that Select-Tech intentionally used the TRUKTONE
mark "in connection with the sale, offer for sale, or distribution of goods."  <u>G & T
Terminal Packaging, Inc.</u>, 425 F.3d at 721.

Accordingly, because plaintiff has provided competent evidence for its trademark
infringement, false designation or origin, and counterfeiting claims against Select-Tech
with respect to the STUTTERTONE, TRUKTONE, and GROVER marks, Select-Tech's
motion for partial summary judgment motion with respect to these claims is **DENIED**.

       3.     <u>Abandonment Defense</u>

Like the AHOT defendants, Select-Tech argues that "GPC indisputably abandoned
all rights in the Grover Marks prior to Plaintiff's purported acquisition thereof."  Joind. at
9.  Select-Tech argues that "[t]he USPTO also canceled the original registrations for
ORGANTONE and TRUKTONE marks in September 2022. Doc No. 69-2 (SUF Nos.
16-17). Plaintiff (Grover Products, LLC) therefore did not acquire any rights in or
associated with these marks from GPC (Grover Products Company) in November 2022."
<u>Id.</u> at 9-10.  Select-Tech argues that "Plaintiff admits that its claims asserted against
Select-Tech accrued prior to its purported acquisition of the Grover Marks in November
2022. JSUF No. 4.  Consequently, all of Plaintiff's Lanham Act claims against Select-
Tech were also extinguished before GPC allegedly assigned them to Plaintiff."  <u>Id.</u> at 10.

In opposition, plaintiff argues that the Grover marks were never abandoned by
GPC because the use of the Grover Marks has been continuous (through GPC's alleged
longtime licensee TAHG) and because GPC never intended to abandon the marks.  Opp.
to joind. at 18-23.[19]  Plaintiff further argues that Select-Tech's cited cases fail to support
its arguments: "Select-Tech cites cases where use of a mark stopped for at least three

---

[19] Plaintiff largely repeats the arguments against abandonment that it asserts in opposition
to the AHOT defendants' motion.  <u>See</u> opp. to mot. at 14-19.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | Date | October 6, 2025 |
|---|---|---|---|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | |

years—and frequently much longer—a time period that gives rise to prima facie evidence of abandonment." Id. at 23-24 (citing cases).

In reply, Select-Tech argues that plaintiff's "attempts to 'readily distinguish' cases cited by Select-Tech [do not] actually address[] the propositions for which they were cited." Select-Tech Reply at 15-16.

As discussed above, supra IV.B.2.b, there is a genuine dispute as to whether GPC abandoned the relevant marks before selling them to plaintiff. Therefore, the Court finds that Select-Tech is not entitled to summary judgment on plaintiff's Lanham Act claims on the basis that the claims were extinguished by GPC's abandonment of the marks.

> 4. Standing (Trademark Infringement and Counterfeiting Claims Based on the GROVER and STUTTTERTONE Marks)

Select-Tech argues that plaintiff lacks standing to assert its trademark infringement and counterfeiting claims pursuant to 15 U.S.C. § 1114(1) because "[i]t is well-established that this section only "allows an action for trademark infringement to be brought by the 'registrant' of the mark."" Id. at 11 (citing Upper Deck Company v. Panini America, Inc., 533 F.Supp.3d 956, 962 (S.D. Cal. 2021); 6 McCarthy on Trademarks and Unfair Competition § 32:3 (5th ed.)). Select-Tech argues that "GPC indisputably abandoned the GROVER word mark and STUTTERTONE mark prior to their alleged assignment to Plaintiff. This renders the registrations for those marks invalid." Id. (quoting Money Store, 689 F.2d at 675 for the proposition that an "abandoned trademark is not capable of assignment because such a mark is subject to cancellation by the [USPTO] or by the courts and is therefore invalid"). Therefore, Select-Tech argues that "[w]ithout a valid registration for the GROVER word mark and STUTTERTONE mark, Plaintiff cannot maintain its § 1114 claims based thereon." Id. (citing cases).

In opposition, plaintiff argues that it has standing to assert its Lanham Act claims because GPC never abandoned the relevant marks. Plaintiff argues that it is "unquestionably the registrant of incontestable marks." Id. at 25 (citing 15 U.S.C. § 1127, which defines registrant to include "successors and assigns of such applicant or registrant," and GPC's sale of its assets and rights to plaintiff, opp. to joind. at 5-6). Plaintiff further argues that "even if the registration were subject to cancellation—which

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | Date | October 6, 2025 |
|---|---|---|---|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | |

they are not—Plaintiff maintained all common law rights in the marks and would therefore have a right to remedy any alleged deficiencies in the registrations and/or assert its common law rights." Id. at 25.

In reply, Select-Tech argues that "Select-Tech never argued that Grover lacked standing to assert claims pursuant to Section 1125(a). See Doc. 79-2 at 24:21-25:15. Rather, it argued that any abandonment of the Grover Marks by GPC and any cancellation of the registration for those marks would deprive Grover of standing to assert claims *pursuant to Section 1114 of the Lanham Act*. Doc. 72-4 at 11:4-12." Select-Tech Reply at 16 (emphasis in original).

As discussed above, supra IV.B.2.b, there is a genuine dispute as to whether GPC abandoned the relevant marks before selling them to plaintiff. Therefore, the Court finds that Select-Tech is not entitled to summary judgment on plaintiff's Section 1114 claims based on these marks on the basis that the claims were extinguished by GPC's abandonment of the marks.

**V.    CONCLUSION**

In accordance with the foregoing, the Court **DENIES** the AHOT defendants' motion for summary judgment.

The Court **DEFERS** consideration of Select-Tech's motion for partial summary judgment on plaintiff's claims against it based on the ORGANTONE mark but otherwise **DENIES** Select-Tech's motion for summary judgment.

The Court **DENIES** the AHOT defendants' motion to exclude docket 103-1 from the summary judgment record.

The Court **ORDERS** plaintiff to apprise the Court within fourteen days of this order regarding whether plaintiff opposes the AHOT defendants' motion for partial summary judgment with respect to claims against the AHOT defendants based on the ORGANTONE and STUTTERTONE marks.

The Court **ORDERS** plaintiff to apprise the Court within fourteen days of this order regarding whether plaintiff opposes the AHOT defendants' motion for partial

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:24-cv-08002-CAS-PDx | Date | October 6, 2025 |
|---|---|---|---|
| Title | Grover Products LLC v. Air Horns of Texas, LLC et al | | |

summary judgment with respect to all claims against Texas Air Horns, LLC, Jason Gabbert, Jana Hildreth, and Gerald Gabbert.

The Court **ORDERS** plaintiff to apprise the Court within fourteen days of this order regarding by what date it will be in a position to present evidence it contends will substantiate its claims against Select-Tech based on the ORGANTONE mark.

IT IS SO ORDERED.

|  | 00 | : | 47 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |